IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MOUNTAIN VALLEY PIPELINE, LLC,

                 Plaintiff,

v.                          //   CIVIL ACTION NO. 1:17CV211
                                 (Judge Keeley)

SHARON SIMMONS, Administratrix
of the Charles D. Simmons Estate
(Parcel ID NO. 7-13D-11), et al.,

                 Defendants.

MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]

The plaintiff, Mountain Valley Pipeline, LLC ("MVP"),[1] seeks
to condemn certain temporary and permanent easements necessary for
the construction and operation of an interstate natural-gas
pipeline. To facilitate the expeditious completion of its project,
MVP moves the Court to grant partial summary judgment regarding its
right to condemn the easements, and to enter a preliminary
injunction allowing it to access and possess the property prior to
paying just compensation (Dkt. No. 5).

Having carefully considered the record and the parties'
arguments regarding the pending motions, for the following reasons,
the Court **DENIES** the Motion for Stay of Proceedings (Dkt. No. 31),

---

[1] MVP is a Delaware LLC owned by MVP Holdco, LLC, a subsidiary
of EQT Corporation; US Marcellus Gas Infrastructure, LLC, a
subsidiary of NextEra Energy Capital Holdings, Inc.; WGL Midstream,
Inc., a subsidiary of WGL Holdings, Inc.; RGC Midstream, LLC, a
subsidiary of RGC Resources, Inc.; and Con Edison Gas Midstream,
LLC, a subsidiary of Consolidated Edison (Dkt. No. 1-2 at 2 n.4).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

**GRANTS** MVP's Motion to Strike (Dkt. No. 28), **DENIES AS MOOT**
Defendants' Motion to Dismiss (Dkt. No. 23-1), and **GRANTS** MVP's
Motion for Partial Summary Judgment and Immediate Access to and
Possession of the Easements Condemned for Construction of the MVP
Project (Dkt. No. 5).

## I. LEGAL FRAMEWORK

This proceeding is governed by the Natural Gas Act ("NGA" or
"the Act"), which provides private natural-gas companies the power
to acquire property by eminent domain. 15 U.S.C. § 717 et seq.
Under the Act, a "natural-gas company" is "a person engaged in the
transportation of natural gas in interstate commerce, or the sale
in interstate commerce of such gas for resale." Id. § 717a(6). Such
companies may build and operate new pipelines only after obtaining
a certificate of public convenience and necessity ("Certificate")
from the Federal Energy Regulatory Commission ("FERC" or "the
Commission"). As the Fourth Circuit has summarized:

> The procedure for obtaining a certificate from FERC is
> set forth in the NGA, and its implementing regulations.
> The process begins with an application from the gas
> company that includes, among other information, (1) a
> description of the proposed pipeline project, (2) a
> statement of the facts showing why the project is
> required, and (3) the estimated beginning and completion
> date for the project. Notice of the application is filed
> in the Federal Register, public comment and protest is

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

> allowed, and FERC conducts a public hearing on the
> application. As part of its evaluation, FERC must also
> investigate the environmental consequences of the
> proposed project and issue an environmental impact
> statement. At the end of the process FERC issues a
> certificate if it finds that the proposed project "is or
> will be required by the present or future public
> convenience and necessity." In its order issuing a
> certificate, FERC specifies a date for the completion of
> construction and the start of service. The certificate
> may include any terms and conditions that FERC deems
> "required by the public convenience and necessity."

E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 818 (4th Cir. 2004)

(internal citation omitted).

"Once FERC has issued a certificate, the NGA empowers the

certificate holder to exercise 'the right of eminent domain' over

any lands needed for the project." Id. (citing 15 U.S.C.

§ 717f(h)). The authority by which natural-gas companies may

exercise the right is set forth fully in the Act:

> When any holder of a certificate of public convenience
> and necessity cannot acquire by contract, or is unable to
> agree with the owner of property to the compensation to
> be paid for, the necessary right-of-way to construct,
> operate, and maintain a pipe line or pipe lines for the
> transportation of natural gas, and the necessary land or
> other property, in addition to right-of-way, for the
> location of compressor stations, pressure apparatus, or
> other stations or equipment necessary to the proper
> operation of such pipe line or pipe lines, it may acquire
> the same by the exercise of the right of eminent domain
> in the district court of the United States for the
> district in which such property may be located, or in the
> State courts. The practice and procedure in any action or
> proceeding for that purpose in the district court of the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

> United States shall conform as nearly as may be with the
> practice and procedure in similar action or proceeding in
> the courts of the State where the property is situated:
> *Provided*, That the United States district courts shall
> only have jurisdiction of cases when the amount claimed
> by the owner of the property to be condemned exceeds
> $3,000.

15 U.S.C. § 717f(h). Notably, the "state procedure requirement has

been superseded" by the implementation of Fed. R. Civ. P. 71.1,

which provides the applicable procedure in most condemnation cases.

See Sage, 361 F.3d at 822.

There are, therefore, three essential prerequisites that must

be met prior to exercising the power of eminent domain under the

NGA. The natural-gas company must only establish that "(a) It is a

holder of a certificate of public convenience and necessity; (b) It

needs to acquire an easement, right-of-way, land or other property

necessary to the operation of its pipeline system; and (c) It has

been unable to acquire the necessary property interest from the

owner." Rover Pipeline LLC v. Rover Tract No(s) WV-DO-SHB-011.510-

ROW-T & WV-DO-SHB-013.000-ROW-T, No. 1:17cv18, 2017 WL 5589163, at

*2 (N.D.W.Va. Mar. 7, 2017).

The law in the Fourth Circuit is clear that, "once a district

court determines that a gas company has the substantive right to

condemn property under the NGA, the court may exercise equitable

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

power to grant the remedy of immediate possession through the issuance of a preliminary injunction." Sage, 361 F.3d at 828. A preliminary injunction is proper when the plaintiff can "[1] establish that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).[2]

## II. BACKGROUND

On October 13, 2017, FERC granted a Certificate to MVP authorizing construction of a 303.5-mile-long, 42-inch-diameter natural-gas pipeline from Wetzel County, West Virginia, to Pittsylvania County, Virginia ("MVP Project" or "the Project")

---

[2] Because the Court makes reference to the facts and analysis in Sage throughout this Opinion and Order, it must note that the decision applied the preliminary injunction test from Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 193-96 (4th Cir. 1977), which was abrogated by the Supreme Court's holding in Winter. Real Truth About Obama, Inc. v. Fed. Election Com'n, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds and remanded, 559 U.S. 1089 (2010), standard reaffirmed in 607 F.3d 355 (4th Cir. 2010). Nonetheless, Sage is binding on this Court to the extent that its analysis of each preliminary injunction factor comports with the requirements of Winter.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

(Dkt. No. 1-2 at 3).[3] The Project also includes three compressor stations in West Virginia and four interconnections along the pipeline's route. Id. at 3-4. The Certificate is subject to various environmental conditions, including those that must be fulfilled before and during construction of MVP's pipeline. Id. at app. C.

MVP must obtain easements along the Project in order to construct its pipeline, and under the appropriate circumstances the NGA grants it the authority to do so by eminent domain. On December 8, 2017, MVP sought to exercise that authority over certain property located in the Northern District of West Virginia, which it could not acquire by agreement, by filing a complaint pursuant to the NGA and Fed. R. Civ. P. 71.1 (Dkt. No. 1). As required by Rule 71.1(c)(2), it included descriptions of the property, as well as the interests to be taken (Dkt. Nos. 1 at 5-7; 1-1; 1-3). On December 13, 2017, MVP filed the following motions: Motion for Partial Summary Judgement and Immediate Access to Survey Parcel ID Nos. 02-4L-19, 02-4L-12 Owned by Arthur C. And Judy Roberts ("Survey Motion") (Dkt. No. 3); Motion for Partial Summary Judgment and Immediate Access to and Possession of the Easements Condemned

---

[3] Citations to the FERC Certificate reference pagination of the FERC Certificate itself rather than CM/ECF pagination.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

for Construction of MVP Project ("Possession Motion") (Dkt. No. 5);
and Motion for Expedited Hearing on Motions for Partial Summary
Judgment and Immediate Access to and Possession of the Easements
Condemned (Dkt. No. 7).

Following a status conference on December 21, 2017, the Court
set a schedule for discovery and briefing on the Survey Motion and
Possession Motion (Dkt. No. 33). The next day, several defendants
filed a motion to stay proceedings on MVP's motion for immediate
possession, which remains pending (Dkt. No. 31). On December 29,
2017, the Court denied the Survey Motion as moot after being
advised by the parties that the motion was no longer in controversy
(Dkt. No. 42). The Court subsequently granted MVP's motion for an
expedited hearing, and amended the schedule to include a hearing on
the Possession Motion (Dkt. No. 43).

Pursuant to Fed. R. Civ. P. 71.1(e)(2), the following
defendants asserted objections and defenses by way of an answer:
Hilry Gordon, Gerald Wayne Corder, Randall N. Corder, Bryan and
Helen Montague Van Nostrand, Charles F. Chong and Rebecca Ann
Eneix-Chong, Nancy Shewmake Bates, and William G. Lloyd (Dkt. No.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

23-1);[4] Western Pocahontas Properties LP ("Western Pocahontas")
(Dkt. No. 45); ICG Eastern, LLC ("ICG Eastern") (Dkt. No. 48);[5]
George Ernest Bright and William Townsend Bright (Dkt. No. 50);
Dale Eastham, Travis Eastham, Brent Fairbanks, David Fairbanks,
Michael Fairbanks, Edward Charles Smith, Sr., Edward Charles Smith,
II, Todd Edward Smith, and Jeremy Collins (Dkt. No. 51); Adam L.
Matheny and Glenn D. Matheny (Dkt. No. 52); and Arthur C. Roberts
and Judy D. Roberts (Dkt. No. 53). On January 23, 2018, the Court
conducted an evidentiary hearing on MVP's Possession Motion (Dkt.
No. 103). Thereafter, the parties filed post-hearing briefs
regarding MVP's Possession Motion (Dkt. Nos. 112; 113; 114). The
pending motions are now ripe for disposition.

### III. MOTION TO STAY

On December 22, 2017, defendants Charles F. Chong and Rebecca
Ann Eneix-Chong ("the Chongs") moved to stay proceedings on MVP's
motion for immediate possession (Dkt. No. 31), contending that,
because there is a pending application for rehearing before FERC,

---

[4] This answer also included a motion to dismiss the complaint,
which MVP moved to strike as procedurally improper (Dkt. No. 31).

[5] Although ICG Eastern and MVP disagree concerning just
compensation, ICG Eastern no longer objects to MVP's request for
immediate access to its property (Dkt. No. 112).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

this Court should delay consideration of equitable relief for MVP.
According to the Chongs, the regulatory process before FERC has
subjected them to "administrative purgatory." Id. at 2. At the
evidentiary hearing on January 23, 2018, however, MVP and the
Chongs advised that they had reached an agreement in principle
regarding just compensation that would render moot the Chongs'
motion to stay. Because that agreement is not final, however, the
Court has considered the motion and **DENIES** it for the following
reasons.

When FERC issues a Certificate, aggrieved parties may petition
for rehearing within 30 days. Unless FERC "acts upon the
application for rehearing within thirty days," the application is
deemed denied. Following further review by FERC, parties may seek
judicial review, which is exclusively "in the court of appeals of
the United States for any circuit wherein the natural-gas company
to which the order relates is located or has its principal place of
business, or in the United States Court of Appeals for the District
of Columbia." 15 U.S.C. § 717r(a). Aggrieved parties are given "60
days after the order of [FERC] upon the application of rehearing"
to seek judicial review. Id. § 717r(b).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

FERC Certificates are effective on the date that they are issued. 18 C.F.R. § 285.2007(c)(1) (2017). Filing an application for rehearing or seeking judicial review does not "operate as a stay of [FERC's] order" unless otherwise ordered by FERC or the applicable court of appeals. 15 U.S.C. § 717r(c). Only FERC and the courts of appeals have jurisdiction to stay the effect of a Certificate, and pending applications for rehearing – or even granted applications for rehearing – do not nullify the Certificate's effect in an eminent domain proceeding before the district court. See Sabal Trail Transmission, LLC v. 7.72 Acres in Lee Cty., Ala., No. 3:16-cv-173, 2016 WL 8900100, at *4 (M.D. Ala. June 3, 2016) (collecting cases); Steckman Ridge GP, LLC v. An Exclusive Nat. Gas Storage Easement Beneath 11.078 Acres, More or Less, No. 08-168, 2008 WL 4346405, at *3-*6 (W.D. Pa. Sept. 19, 2008).

In this case, FERC issued MVP's Certificate on October 13, 2017. On November 13, 2017, the Chongs and a number of other interested parties timely moved for rehearing before FERC. They argue that MVP's Project is not necessary under the NGA, and that the FERC Certificate rests on a deficient final environmental impact statement, in violation of the National Environmental Policy

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Act (Dkt. No. 31-2 at 2, 6-7). FERC responded with a "tolling
order" on December 13, 2017, which states:

> In order to afford additional time for consideration of
> the matters raised or to be raised, rehearing of the
> Commission's order is hereby granted for the limited
> purpose of further consideration, and timely-filed
> rehearing requests will not be deemed denied by operation
> of law.

(Dkt. No. 31-1). According to FERC, such tolling orders do not
constitute an "act[] upon" motions for rehearing, and associated
Certificates are not final agency actions subject to judicial
review (Dkt. No. 31-3 at 5). Neither FERC nor a court of appeals
has enjoined enforcement of MVP's Certificate.

While acknowledging that this Court does not have jurisdiction
to stay the Certificate itself, the Chongs argue that this Court
should exercise its equitable power to stay consideration of MVP's
request for a preliminary injunction. They contend that FERC's
tolling order "gores [them] on the horns of a dilemma": MVP will
contend that the Chongs may only challenge the FERC Certificate
before FERC and the court of appeals, while the tolling order
indefinitely delays such administrative and judicial review (Dkt.
No. 31 at 4). According to the Chongs, they may be deprived of
their property in this proceeding before the validity of the FERC
Certificate is fully resolved, resulting in a "a clear case of

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

hardship" and a "scandal to the administration of justice" that
warrants the imposition of a stay (Dkt. No. 59 at 2, 5).

In support of their request, the Chongs rely solely on <u>Landis</u>
<u>v. North American Co.</u>, 299 U.S. 248 (1936), which discusses the
Court's inherent equitable authority. In <u>Landis</u>, the Supreme Court
held that "the power to stay proceedings is incidental to the power
inherent in every court to control the disposition of the causes on
its docket with economy of time and effort for itself, for counsel,
and for litigants." <u>Id.</u> at 254. "[T]he suppliant for a stay must
make out a clear case of hardship or inequity in being required to
go forward, if there is even a fair possibility that the stay for
which he prays will work damage to someone else." Foreclosing the
district courts' power to issue such stays might result in
"scandal[s] to the administration of justice." <u>Id.</u> at 255.

The Court acknowledges that it possesses inherent authority to
stay consideration of MVP's request for a preliminary injunction,
but concludes that several factors weigh against such an exercise
of discretion in this case. First, the Chongs seek unusual relief.
They do not ask the Court to stay this condemnation action in its
entirety, but instead request equitable relief from the possibility
that MVP will receive equitable relief. Yet the Court's analysis of

12

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

whether MVP is entitled to a preliminary injunction necessarily will take into account whether "the balance of equities tips in [MVP's] favor." Winter, 555 U.S. at 20. The Chongs' motion therefore is a mere redundancy.

Second, the Chongs' argument would warrant similar stays in a broad category of eminent domain cases under the NGA. A review of the cases cited within this Memorandum Opinion and Order establishes that a significant number of eminent domain proceedings commence before administrative and judicial review are complete. See, e.g., Sabal Trail, No. 3:16-cv-173, 2016 WL 8900100, at *4 (collecting cases). In essence, the Chongs disagree with the structure of the NGA, which allows natural-gas companies to exercise the power of eminent domain upon receipt of a Certificate rather than after the Certificate has been subject to judicial review. The NGA also provides a remedy, however, by providing that FERC or the court of appeals may stay a Certificate.

Indeed, the Chongs' attorneys have unsuccessfully requested such a stay from both FERC and the United States Court of Appeals for the District of Columbia, both of which are fully aware that district courts hold the authority to grant preliminary injunctions in eminent domain cases (Dkt. Nos. 31-2; 47 at 6-7). That the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Chongs have been unable to obtain the relief they seek in two other forums does not warrant an exercise of this Court's equitable power. Therefore, the Court **DENIES** the Chongs' Motion for Stay of Equitable Proceedings on Plaintiff's Motion for Immediate Possession (Dkt. No. 31).

## IV. MOTION TO DISMISS AND MOTION TO STRIKE

On December 21, 2017, several defendants moved to dismiss MVP's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted (Dkt. No. 23-1). MVP moved to strike the motion to dismiss, arguing that it is procedurally improper (Dkt. No. 28).

Fed. R. Civ. P. 71.1 governs "proceedings to condemn real . . . property by eminent domain." The rule provides for only one responsive pleading: "A defendant that has an objection or defense to the taking must serve an answer within 21 days after being served with the notice." Among other things, such an answer is required to "state all the defendant's objections and defenses to the taking." Fed. R. Civ. P. 71.1(e)(2). Moreover, the rule expressly states that "[a] defendant waives all objections and defenses not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed." Fed. R.

14

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Civ. P. 71.1(e)(3). As the advisory notes regarding Rule 71.1 explain, "[d]eparting from the scheme of Rule 12, subdivision (e) requires all defenses and objections to be presented in an answer and does not authorize a preliminary motion. There is little need for the latter in a condemnation proceeding."

The plain language of Rule 71.1 makes clear that motions to dismiss are not permitted in condemnation proceedings, rendering the defendants' motion to dismiss procedurally improper. See Atl. Seaboard Corp. v. Van Sterkenburg, 318 F.2d 455, 458 (4th Cir. 1963) ("We need not consider the dubious merits of the . . . motion to dismiss, for [it was] not [an] allowable pleading[]."). Therefore, the Court **GRANTS** MVP's motion to strike (Dkt. No. 28) and **DENIES AS MOOT** the defendants' motion to dismiss (Dkt. No. 23-1). Nonetheless, to the extent the defendants raise similar arguments in their answers and responses to MVP's motion for summary judgment, they are addressed below. Accord Sabal Trail, 3:16-cv-173, 2016 WL 8900100, at *3.

## V. MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court may only exercise its equitable power to grant a preliminary injunction after determining "that a gas company has the substantive right to condemn property under the NGA." Mid

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Atlantic Express, LLC v. Baltimore Cty., Md., 410 F. App'x 653, 657
(4th Cir. 2011) (unpublished decision) (quoting Sage, 361 F.3d at
828). As discussed, to establish that it has the right to condemn,
MVP must demonstrate only that 1) it holds a FERC Certificate, 2)
it needs to acquire the easements, and 3) it has been unable to
acquire them by agreement. 15 U.S.C. § 717f(h). MVP has satisfied
each of these elements, and is thus entitled to partial summary
judgment regarding its right to condemn.

Summary judgment is appropriate where the "depositions,
documents, electronically stored information, affidavits or
declarations, stipulations (including those made for purposes of
the motion only), admissions, interrogatory answers, or other
materials" establish that "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for
summary judgment, the Court reviews all the evidence "in the light
most favorable" to the nonmoving party. Providence Square Assocs.,
L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The
Court must avoid weighing the evidence or determining its truth and
limit its inquiry solely to a determination of whether genuine

16

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

**A.    MVP holds a FERC certificate.**

The parties cannot dispute that FERC issued MVP a Certificate on October 13, 2017 (Dkt. No. 1-2). Various defendants argue, however, that the FERC Certificate's conditions render it ineffective to grant the power of eminent domain under the NGA, thus divesting the Court of jurisdiction (Dkt. Nos. 69 at 3-4; 70 at 2-5). That argument is without merit.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Pursuant to 15 U.S.C. § 717f(e), FERC "shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require." FERC is capable of imposing conditions precedent to the exercise of eminent domain power, but it did not do so in this case. See Mid-Atlantic, 410 F. App'x 653 (dismissing case in which the FERC Certificate contained conditions that must be fulfilled prior to exercising the power of eminent domain). In addition, FERC can condition actual approval of a project on the fulfillment of certain conditions. See, e.g., Del. Dep't of Nat. Resources & Envtl. Control v. FERC, 558 F.3d 575, 577-79 (D.C. Cir. 2009) (noting that a "conditional approval" could not approve a project without fulfillment of a condition).

Here, the FERC Certificate includes numerous environmental conditions, which require MVP to obtain a variety of permits and approvals from state and federal agencies at various stages of the Project (Dkt. No. 1-2 at app. C). There is nothing in the FERC Certificate, however, that conditions either approval of the Project or MVP's exercise of eminent domain under the NGA. Instead, FERC intended to confer the power of eminent domain. Id. at 27.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY [DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

In this case, therefore, "the FERC Order cannot reasonably be read to prohibit [MVP] from exercising eminent domain authority until it has complied with all conditions set forth in the Appendix." Constitution Pipeline Co., LLC v. A Permanent Easement for 0.42 Acres & Temporary Easements for 0.46 Acres, No. 1:14-CV-2057, 2015 WL 12556145, at *2 (N.D.N.Y. Apr. 17, 2015). When FERC's conditions are not precedent to approval of a project or the exercise of eminent domain, whether an applicant has complied with those conditions is an issue for FERC and cannot delay the exercise of eminent domain. See, e.g., Sabal Trail Transmission, LLC v. 7.72 Acres in Lew Cty., Ala., No. 3:16-CV-173-WKW, 2016 WL 3248666, at *4 (M.D. Ala. June 8, 2016) ("There is no basis to delay the condemnation proceedings because any failure to comply with the FERC certificate is an issue for FERC - not this court at this stage in the proceedings."); Columbia Gas Transmission, LLC v. 370 Acres, More or Less, No. 1:14-0469-RDB, 2014 WL 2092880, at *4 (D. Md. Oct. 9, 2014).

Nonetheless, the defendants argue that the environmental conditions contained within the Certificate undermine its validity in this Court. They argue that § 717f(e) allows FERC to impose only limitations on MVP's operation of the pipeline, not prerequisites

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

to MVP's Project. They argue that FERC exceeded its authority by
imposing conditions that must be satisfied prior to construction,
such as acquiring necessary permits. They ask the Court to find
that MVP does not truly hold a FERC Certificate (Dkt. No. 70 at 3-
5). The Court rejects these arguments for two reasons.

First, analyzing the propriety and validity of a FERC
Certificate is not the Court's role in the statutory scheme. As
summarized by the District of Maryland:

> A district court's role in proceedings involving FERC
> certificates is circumscribed by statute. The district
> court's role is simply to evaluate the scope of the
> certificate and to order condemnation of property as
> authorized in the certificate. Disputes over the reasons
> and procedures for issuing certificates of public
> convenience and necessity must be brought to the FERC.

Columbia Gas, No. 1:14-0469-RDB, 2014 WL 2092880, at *3 (quoting
Columbia Gas Transmission, LLC v. 76 Acres More or Less, Civ. A.
No. Elh-14-0110, 2014 WL 2960836 (D. Md. June 27, 2014)). "The NGA
does not allow landowners to collaterally attack the FERC
certificate in the district court, it only allows enforcement of
its provisions." Transwestern Pipeline Co. v. 17.19 Acres of
Property Located in Maricopa Cty., 550 F.3d 770, 778 n.9 (9th Cir.
2008) (citing Williams Nat'l Gas Co. v. City of Oklahoma City, 890
F.2d 255, 264 (10th Cir. 1989)); see also Gas Transmission

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Northwest, LLC v. 15.83 Acres of Permanent Easement, 126 F. Supp. 3d 1192, 1198 (D. Or. 2015). Therefore, the defendants' suggestion that this Court declare the FERC Certificate invalid is completely improper.

Second, even if the Court had jurisdiction to consider the validity of MVP's Certificate, the substance of the defendants' argument is of dubious merit. The NGA simply does not contain a provision limiting the exercise of eminent domain when conditions have not been met, and "[c]ourts have repeatedly rejected similar arguments that a pipeline company cannot exercise eminent domain because a FERC Order is conditioned." Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.14 Acres, No. 17-715, 2017 WL 3624250, at *6 (E.D. Pa. Aug. 23, 2017) (collecting cases). The plain language of § 717f(e) permits FERC to attach conditions to the FERC Certificate, not any particular kind of condition.[6]

---

[6] The defendants argue that the Court should employ the canon of constitutional avoidance and construe the NGA narrowly (Dkt. No. 70 at 4-5). This is a misuse of the canon. "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them." United States v. Mills, 850 F.3d 693, 699 (4th Cir. 2017) (quoting Clark v. Martinez, 543 U.S. 371, 385 (2005) (Scalia, J.) (emphasis in original)).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Moreover, the cases cited by the defendants do not support their argument. For instance, they citing <u>Northern Natural Gas Co., Division of InterNorth, Inc. v. FERC</u>, 827 F.2d 779, 782 (D.C. Cir. 1987), they argue that FERC may only impose "conditions on the terms of the proposed service itself," rather than pre-construction conditions (Dkt. No. 70 at 3). <u>Northern Natural</u> simply does not stand for this limited proposition. There, the question presented was "whether the Commission lawfully imposed upon the certificate the condition that [the natural-gas company] credit fixed-cost related revenues from its proposed discount resale service to the customers of its existing non-discount resale service." <u>N. Nat.</u>, 827 F.2d at 781. In <u>Northern Natural</u>, the circuit court reaffirmed that § 717f(e) allows FERC to "impos[e] conditions on the terms of the proposed service itself," not "on the terms of services not directly before the Commission." <u>Id.</u> at 782. That ruling on the scope of § 717f(e) is thus wholly distinguishable from the facts of this case, where FERC imposed conditions on the construction of MVP's Project itself, rather than a separate "service[] not before it in the certificate proceeding." <u>Id.</u> at 783 (quoting <u>Panhandle E. Pipe Line Co. v. FERC</u>, 613 F.2d 1120, 1133 (D.C. Cir. 1979)).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

In summary, MVP's FERC Certificate is effective in this Court
and does not include a condition limiting the exercise of eminent
domain. The Court lacks jurisdiction to consider the defendants'
challenge regarding the validity of the Certificate, and thus
concludes that MVP has satisfied the threshold requirement under
§ 717f(h).

**B.   The property interests are necessary.**

MVP next must establish that the easements sought are
necessary to the construction, operation, and maintenance of its
pipeline. 15 U.S.C. § 717f(h). MVP has established that the
easements are "necessary and consistent with the easement rights
that FERC authorized [MVP] to obtain." Rover Pipeline LLC, No.
1:17cv18, 2017 WL 5589163, at *2; see also Sabal Trail, No. 3:16-
CV-173-WKW, 2016 WL 3248666, at *6 ("FERC has determined that the
property is necessary for the project . . . .").[7] Moreover, the
conditions outlined in the FERC Certificate do not render the

_____

[7] Several defendants object that MVP's complaint does not
contain sufficient maps, and deny that the easements are located
along the route approved by FERC (Dkt. No. 23-1 at 19). Not only
does Rule 71.1 not require any "particular type of map, drawing, or
measurements" as long as the description "identifies the size and
placement of the easements" such that the landowner can identify
them, In re Transcon. Gas Pipeline Co., LLC, 1:16cv02991, 2016 WL
8861714, at *4 (N.D. Ga. Nov. 10, 2016), but the defendants have
not presented any evidence in support of their claim.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

easements unnecessary to the construction of the MVP Project.
Therefore, MVP has satisfied the second requirement under
§ 717f(h).

**C.   MVP has been unable to acquire the interests by agreement.**

Finally, MVP must establish that it "cannot acquire by
contract, or is unable to agree with the owner of property to the
compensation to be paid for" the easements. 15 U.S.C. § 717f(h).
According to MVP, it "made offers . . . to acquire the required
easements . . . but was unable to acquire them by agreement" (Dkt.
No. 5-1 at 3). Nonetheless, several defendants argue that MVP has
not met this requirement because it has not offered proof of good-
faith negotiations (Dkt. Nos. 69 at 5; 71 at 7-10).[8]

---

[8] Several answers assert that "easement negotiations between
MVP's land agents and private property owners were intended to
intimidate and instill fear in owners to motivate them to sign
MVP's form easement agreements conveying rights well beyond what
MVP needs or was granted in its Certificate." They assert that
"MVP's land agents made offers to acquire easement rights in the
private property of Landowners based upon insufficient or incorrect
facts as to the specific property proposed to be encumbered, in
many cases without any maps, drawings or plats provided to
Landowners to allow a meeting of the minds as to the subject of the
offer." (Dkt. Nos. 23-1 at 18; 50 at 8; 51 at 8; 52 at 8; 53 at 8).
Despite the opportunity to do so at the evidentiary hearing, the
defendants have not presented any evidence in support of these
broad allegations of MVP's bad-faith negotiations. In any event,
the Court notes that disagreement concerning the value of an
easement does not amount to bad faith. 15 U.S.C. § 717f(h)
(granting right of eminent domain if Certificate holder "is unable

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

As this Court has previously reasoned, MVP "is not required by
the Natural Gas Act or Rule 71.1 to engage in 'good faith'
negotiations with the landowner." Hardy Storage Co., LLC v. Prop.
Interests Necessary to Conduct Gas Storage Operations, No. 2:07CV5,
2009 WL 689054, at *5 (N.D.W.Va. Mar. 9, 2009) (citing E. Tenn.
Nat. Gas LLC v. 3.62 Acres in Taxewell Cty., Va., 2006 WL 1453937,
at *10 (W.D. Va. May 18, 2006)); see also Columbia Gas Transmission
Corp. v. An Easement to Construct, Operate, and Maintain a 24-Inch
Pipeline, No. 5:07cv04009, at *4 n.4 (W.D. Va. June 9, 2008). But
see Transcon. Gas Pipe Line Corp. v. 118 Acres of Land, 745 F.
Supp. 366, 369 (E.D. La. 1990). Consequently, the defendants'
related objections are without merit, and the Court concludes that
MVP has been unable to acquire the easements by contract or
agreement.

**D.    The defendants' other objections are without merit.**

The defendants raise several additional objections to MVP's
eminent-domain authority. None of them persuades the Court that
MVP's requests for relief are untimely or improper.

---

to agree with the owner of property to the compensation").

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

## 1.    Ability to Pay

Several of the defendants argue that MVP cannot exercise the

power of eminent domain because it has not made "adequate

provision" (Dkt. Nos. 70 at 5; 71 at 5-7). They contend that

whether MVP is able to pay just compensation for their property was

not determined by the FERC Certificate, that MVP is a private

company at constant risk of insolvency, and that MVP is a new

project without existing customers (Dkt. No. 70 at 6). Despite

these challenges, the Court concludes that MVP has established an

ability to pay such that it may seek immediate possession of the

easements. See Sage, 361 F.3d at 824 (discussing "adequate

provision" in the context of injunctive relief rather than the

pipeline company's eminent-domain authority).

A similar challenge was considered and rejected by the Fourth

Circuit in Sage, where the court acknowledged that, although "the

Constitution does not prevent a condemnor from taking possession of

property before just compensation is determined and paid . . . the

owner is entitled to reasonable, certain, and adequate provision

for obtaining compensation before his occupancy is disturbed." Id.

at 824 (citing Cherokee Nation v. S. Kan. Ry. Co., 135 U.S. 641

(1890)). The court was satisfied that the condemnor had provided

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

adequate assurance by "depositing cash with the court in an amount equal to the appraised value," and that its parent company's reported earnings - $1.17 billion - were sufficient to cover any difference between the deposit and just compensation. Id. (citing Wash. Metro. Area Transit Auth. v. One Parcel of Land, 706 F.2d 1312, 1321 (4th Cir. 1983) (finding sufficient the fact that agency could be sued and had substantial assets)).

Here, MVP has satisfied the requirement of adequate provision by indicating its willingness to post a bond equal to the appraised value of the easements to be taken. Accord Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 0.03 Acres, No. 4:17CV565, 2017 WL 3485752, at *5 (M.D. Pa. Aug. 15, 2017). At the evidentiary hearing on its motion for a preliminary injunction, MVP presented the testimony of Stephen A. Holmes ("Holmes"), a certified general appraiser, to establish the estimated diminution in property value that will result from MVP's takings (Dkt. No. 106 at 79-81). Following the Uniform Standards of Professional Appraisal Practice ("USPAP"), Holmes used a comparable sales approach that took into account the properties' highest and best use to arrive at a "total

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

cumulative value for the diminution in property value" of $81,300.

Id. at 82, 85, 95, 97.[9]

In response to Holmes's testimony, the defendants offered the
testimony of Russel Rice ("Rice"), a real estate appraiser (Dkt.
No. 107 at 4-5). Although Rice had reviewed Holmes's appraisal
report, he "did not complete a thorough and entire review of it,"
nor did he prepare a written review of the report. Id. at 8-9.
Nonetheless, he opined that Holmes's report is insufficient under
the USPAP because restricted appraisal reports may only be used by
the appraiser's client, and Rice would not testify about a
restricted appraisal in a bond hearing. Id. at 11-13, 15. Rice did
not provide an opinion on whether Holmes's estimation of value was
correct, but rather opined only that the report does not provide
sufficient information to assess the reliability of its approach.
As he stated, "I'm saying I disagree with the means with which the
values were communicated. We don't have enough information in that
report to be able to rely upon it." Id. at 16, 20, 22.

---

[9] Holmes acknowledged that he used the USPAP to arrive at an
estimated value for the simple purpose of setting a bond. He
acknowledged knowing that the Uniform Appraisal Standards for
Federal Land Acquisitions ("Yellow Book") must be used to determine
just compensation in federal condemnation proceedings (Dkt. No. 106
at 90).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

The defendants argue both that Holmes's USPAP appraisal is unreliable and that he should have used the Yellow Book (Dkt. No. 113 at 17 n.13). These criticisms may be well-taken, but they are insufficient to undermine Holmes's opinion for the purpose of fixing a discretionary bond in the event that a preliminary injunction issues. The bond is meant to "cover[] the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer . . . or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained." <u>Hoechst Diafoil Co. v. Nan Ya Plastics Corp.</u>, 174 F.3d 411, 421 n.3 (4th Cir. 1999) (quoting 11A Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 2954, at 292 (2d ed. 1995)). In this condemnation proceeding, the bond should be fixed as close as practicable to the just compensation amount for which MVP will ultimately be liable. <u>See</u> <u>id.</u>

Without the benefit of a trial on just compensation, it is impossible for the Court to fix the bond at precisely the correct amount. It is satisfied, however, that Holmes's appraisal, as well as the defendants' criticisms, provide a sufficient foundation for

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

fixing the bond in this case.[10] Further, if the bond is insufficient, MVP "will be able to make up the difference" at the time of judgment or face further legal action by the landowners. Sage, 361 F.3d at 824. The MVP Project has a total budget of $3.7 billion, which includes a contingency of $180 million, and FERC has concluded that MVP is "prepared to financially support the project" (Dkt. Nos. 1-2 at 12; 105 at 118; 106 at 51). Cf. Sage, 361 F.3d at 824 (taking into account that natural-gas company's "parent company reported earnings of $1.17 billion from its natural gas transmission division").

Finally, Western Pocahontas argues that MVP is not entitled to condemn the easements at issue in this case because it has not deposited money with the Court pursuant to Fed. R. Civ. P. 71.1(j)(2) (Dkt. No. 115 at 8-9). That rule states that "[t]he

---

[10] Despite the fact that the defendants bear the ultimate burden to establish the amount of just compensation, United States v. 69.1 Acres of Land, 942 F.2d 290, 292 (4th Cir. 1991), they did not present an independent valuation of their property, which would have been of great assistance in the Court's bond-fixing analysis. This decision likely resulted from their position that setting an appropriate bond is a component of MVP's burden regarding adequate provision. See Mountain Valley Pipeline, LLC v. Easements to Construct, Operate, and Maintain a Natural Gas Pipeline, No. 7:17cv492, 2018 WL 648376, at *20 (W.D. Va. Jan. 31, 2018). Assuming that the burden is on the movant in these circumstances, the Court concludes that MVP has satisfied its burden.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY [DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

plaintiff must deposit with the court any money required by law as a condition to the exercise of eminent domain." Fed. R. Civ. P. 65(c), on the other hand, requires as follows: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Unlike the exercise of the United States's "quick-take" powers, which requires a deposit under Rule 71.1, those with eminent domain authority under the NGA must simply post a bond when granted relief under Rule 65. See UGI Sunbury LLC v. A Permanent Easement for 71.7575 Acres, No. 3:16-CV-00788, 2016 WL 7239945, at *2 (M.D. Pa. Dec. 15, 2016). Western Pocahontas's request for a cash deposit thus is without merit.

**2.    Separation of Powers**

Some defendants argue that granting a preliminary injunction violates the separation-of-powers doctrine. More specifically, because Congress could have granted "quick-take" authority under the NGA but chose not to, the defendants contend that the Court should not consider granting equivalent relief in the form of an injunction (Dkt. Nos. 69 at 10-13; 70 at 7). Although the defendants' argument finds support in other jurisdictions, see N.

31

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Border Pipeline Co. v. 86.72 Acres, 144 F.3d 469 (7th Cir. 1998),

the law of the Fourth Circuit is to the contrary.

In Sage, the Fourth Circuit expressly distinguished Northern

Border, reasoning that "the Constitution does not prevent a

condemnor from taking possession of property before just

compensation is determined and paid," and "Congress has not acted

to restrict the availability of Rule 65(a)'s equitable . . . remedy

in an NGA condemnation." 361 F.3d at 824. Furthermore, in a recent

unpublished opinion, our circuit court reaffirmed that

Sage squarely precludes any argument that preliminary injunctions

in NGA condemnation cases are an "unconstitutional violation of

separation of powers":

> The Landowners argue that Sage is distinguishable because
> it did not mention the words "separation of powers."
> However, we stated that "the Constitution does not
> prevent a condemnor from taking possession of property
> before just compensation is determined and paid." In
> addition, we rejected the Sage landowners' argument "that
> only Congress can grant the right of immediate
> possession." Because we are bound to follow this Court's
> published opinions, Sage would require us to reject the
> Landowners' claim even if it was not moot.

Columbia Gas Transmission, LLC v. 76 Acres, More or Less, 701 F.

App'x 221, at 231 & n.7 (4th Cir. 2017) (unpublished decision)

(internal citation omitted). Thus, bound by Sage, the Court rejects

the defendants' contention that considering MVP's request for a

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

preliminary injunction violates the Constitution. <u>Accord</u> <u>Columbia</u>

<u>Gas Transmission, LLC v. 252.071 Acres More or Less</u>, No. ELH-15-

3462, 2016 WL 1248670, at *11-*12 (D. Md. Mar. 25, 2016).

**3.    Western Pocahontas Properties LP**

Western Pocahontas raises several arguments that merit

separate attention, and to which the provision of Fed. R. Civ. P.

71.1(c)(3) is particularly relevant:

> When the action commences, the plaintiff need join as
> defendants only those persons who have or claim an
> interest in the property and whose names are then known.
> But before any hearing on compensation, the plaintiff
> must add as defendants all those persons who have or
> claim an interest and whose names have become known or
> can be found by a reasonably diligent search of the
> records, considering both the property's character and
> value and the interests to be acquired.

As Western Pocahontas concedes (Dkt. No. 107 at 67), MVP seeks

to condemn only surface easements, and has repeatedly represented

that it is not condemning the mineral estate (Dkt. No. 1 at 4-6).

To that end, the complaint names Western Pocahontas with regard to

only one surface parcel in the Northern District of West Virginia,

identified as Tax Assessor Number 6-5F-1 (Dkt. No. 104-11). Western

Pocahontas objects to MVP's proposed taking of its interest in this

surface estate - the temporary use of an existing access road - and

demands just compensation (Dkt. No. 107 at 64, 76-77).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Notably, although Western Pocahontas does not own an interest in any other surface estate that is the subject of this condemnation action, it argues that it owns an interest in the coal beneath the Project, including those surface parcels identified in this case and owned by defendant Kincheloe Mitigation Holdings LLC ("Kincheloe"). According to Western Pocahontas, "construction of the MVP pipeline will require trenching through near-surface coal owned by [Western Pocahontas], rendering mineable and merchantable coal unmineable" (Dkt. No. 71 at 10). As Western Pocahontas has outlined, it provided detailed information to MVP regarding the "location, ownership, and evaluations of coal affected by the pipeline." Representatives from Western Pocahontas and MVP conducted meetings at which they discussed the Project's effect on Western Pocahontas's coal. Western Pocahontas contends that, although MVP made offers regarding easements over its property, it never made an offer that "include[d] any compensation for the coal or other mineral interests" (Dkt. No. 71-4 at 4-5). It estimates that the MVP Project will dig, damage, or render unmineable $8,630,847 in coal royalty in the Northern District (Dkt. No. 71-4 at 3-6). Although the Court is troubled by Western Pocahontas's

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

representations, two considerations convince it that these matters do not preclude the entry of summary judgment.

First, the entirety of Western Pocahontas's mineral interests are not at issue in this action. It is clear that Western Pocahontas's claimed damages include coal it believes will be affected by the entire Project in the Northern District of West Virginia. To the extent that Western Pocahontas argues MVP will affect its interests related to properties not at issue in this case, its arguments are irrelevant. Neither this Court nor Western Pocahontas may dictate the property over which MVP exercises the power of eminent domain. <u>See</u> Fed. R. Civ. P. 71.1 (providing procedures for property that the plaintiff wishes to procure). If work on the Project results in a compensable trespass on or taking of property not joined in this case, Western Pocahontas may avail itself of legal remedies as it sees fit.

Second, Western Pocahontas will have the opportunity to assert its claims regarding the Kincheloe tracts during the just compensation phase of this proceeding. Pursuant to 15 U.S.C. § 717f(h), MVP may only exercise the power of eminent domain if it "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for" the easements. It

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

is evident that the parties have significant disagreements concerning not only the amount of compensation due to Western Pocahontas, but also whether it is due any compensation at all with regard to the Kincheloe tracts. Cf. Columbia Gas Transmission, LLC v. Crawford, 746 F. Supp. 2d 905, 913 (N.D. Ohio 2010) (denying summary judgment where it was unclear that the parties had negotiated regarding leaseholds sought to be condemned).

Given that Western Pocahontas claims an interest in the easement sought over the Kincheloe property, it should be named as a defendant with regard to those tracts in advance of the hearing on compensation. Fed. R. Civ. P. 71.1(c)(3). Accord Sabal Trail, No. 3:16-cv-173, 2016 WL 8900100, at *9 (reasoning that claimant of electrical easement line "can be added for the compensation proceeding"). At that time, Western Pocahontas will have the opportunity to assert its interest and establish just compensation, and the Court will take its contentions into account with regard to setting an appropriate bond in this case.

In a related argument, Western Pocahontas contends that MVP "may not have joined" all necessary property and owners because other mineral interests along the Project may also be affected

36

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

(Dkt. No. 71 at 12-16).[11] Western Pocahontas, however, has failed to identify a single party that should be joined in this action. The Court finds no support for the assertion that it can deny summary judgment based solely on speculation regarding parties that should be joined under Rule 71.1(c)(2)(E) and (c)(3). See <u>Sabal Trail</u>, No. 3:16-cv-173, 2016 WL 8900100, at *9. Should it be determined that other parties have or claim an interest prior to the trial on just compensation, they too should be added pursuant to Rule 71.1(c)(3), but their possible existence does not preclude summary judgment on MVP's right to condemn.

## VI. MOTION FOR IMMEDIATE ACCESS AND POSSESSION

Given that it has the authority to condemn the subject easements, MVP seeks a preliminary injunction permitting it to access and possess the easements prior to paying just compensation (Dkt. No. 5). A preliminary injunction is proper when the plaintiff can "[1] establish that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

---

[11] Given that Fed. R. Civ. P. 71.1 governs who must be joined in condemnation proceedings, Western Pocahontas's argument based on Fed. R. Civ. P. 19 is misplaced (Dkt. No. 115 at 24-26).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY [DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Winter, 555 U.S. at 20. "[A]ll four requirements must be satisfied," Real Truth About Obama, Inc., 575 F.3d at 346, and "[a] preliminary injunction shall be granted only if the moving party clearly establishes entitlement." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017).

The Court is mindful of the fact that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24. Moreover, "[m]andatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Sage, 361 F.3d at 828 (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)). Having given heightened scrutiny to MVP's request for a mandatory preliminary injunction in light of the factors outlined in Winter, the Court concludes that the exigencies warrant such equitable relief.

**A.    MVP is likely to succeed on the merits.**

For the reasons discussed, MVP has satisfied the requirements of 15 U.S.C. § 717f(h) and is authorized to condemn the easements at issue. It has succeeded on the merits, and thus has satisfied the first factor. See Sage, 361 F.3d at 829-30.

MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]

**B.   MVP is likely to suffer irreparable harm.**

MVP must next establish that it will be irreparably harmed in the absence of an injunction. <u>Winter</u>, 555 U.S. at 20. Its harm must be likely rather than merely possible. <u>Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.</u>, 700 F. App'x 251, 263 (4th Cir. 2017) (unpublished decision) (citing <u>Winter</u>, 555 U.S. at 22)). After carefully reviewing the record and the parties' arguments, the Court concludes that MVP will suffer irreparable economic and noneconomic harm that cannot be wholly discounted as "self-inflicted" or capable of mitigation.

The threshold question regarding irreparable harm is whether MVP's anticipated economic losses are sufficient to warrant a preliminary injunction. As the defendants contend, typically, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough." <u>Di Biase</u>, 872 F.3d at 230 (quoting <u>Sampson v. Murray</u>, 415 U.S. 61, 90 (1974)). However, this maxim is tied to "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date." <u>Id.</u>

In other words, "[w]hile it is beyond dispute that economic losses generally do not constitute irreparable harm, this general

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

rule rests on the assumption that economic losses are recoverable."
N.C. Growers' Ass'n, Inc. v. Solis, 644 F. Supp. 2d 664, 671
(M.D.N.C. 2009). A plaintiff may "overcome the presumption" against
a preliminary injunction regarding wholly economic harm, Di Biase,
872 F.3d at 230 (citing Hughes Network Syss., Inc. v. InterDigital
Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994)), in the
"extraordinary circumstances . . . when monetary damages are
unavailable or unquantifiable." Handsome Brook, 700 F. App'x at 263
(citing Multi-Channel TV Cable Co. v. Charlottesville Quality Cable
Operating Co., 22 F.3d 546, 551-52 (4th Cir. 1994)). No party
contests that, if MVP suffers financial losses as the result of its
inability to access the condemned easements, it will not be able to
recover those losses in this or any other litigation. This weighs
in favor of finding irreparable harm. See In re Transcon.,
1:16cv02991, 2016 WL 8861714, at *8.

Treating economic harm as irreparable under the facts of this
case is also consistent with the Fourth Circuit's holding in Sage,
where our circuit court considered several species of irreparable
harm, including economic repercussions:

> The district court found that without a preliminary
> injunction the Patriot Project would suffer "undue delay"
> and that this delay would cause "significant financial
> harm both to ETNG and some of its putative customers."

This finding has ample support in the record. . . . Constructing a ninety-four-mile pipeline is a complex project that can only progress in phases. Certain portions of the project have to be completed before construction can begin on other portions. Therefore, as the district court recognized, "any single parcel has the potential of holding up the entire project." . . . Furthermore, ETNG is under an order from FERC to complete construction and have the pipeline in operation by January 1, 2005. It would not be possible to meet FERC's deadline without a preliminary injunction.

ETNG is also under contractual obligation to provide natural gas to several electric generation plants and local gas utilities by certain dates. Without a preliminary injunction, ETNG would be forced to breach these contracts. ETNG's inability to satisfy these commitments would have negative impacts on its customers and the consumers they serve. . . . ETNG estimates that it would lose in excess of $5 million if construction delay caused it to breach its contractual obligations to supply gas. Finally, delay in the construction of the pipeline would hinder economic development efforts in several Virginia counties.

Sage, 361 F.3d at 828-29 (internal citation omitted); see also

Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less, 768

F.3d 300, 316 (3d Cir. 2014) (holding that financial harm, along

with "safety and potential liability concerns," constituted

irreparable harm).

The defendants have pointed to differing standards regarding

economic harm, and the Court acknowledges that some are more

exacting than others. See, e.g., A Helping Hand, LLC v. Baltimore

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Cty., Md., 355 F. App'x 773, 776 (4th Cir. 2009) (unpublished
decision) (citing cases in which economic loss "threatened the very
existence of [a] business" or was "incalculable"); Air Transp.
Ass'n of Am., Inc. v. Export-Import Bank of the U.S., 840 F. Supp.
2d 327, 336 (D.D.C. 2012); Nat'l Mining Ass'n v. Jackson, 768 F.
Supp. 2d 34, 52 (D.D.C. 2011) (requiring that economic harm be
"certain, imminent, and unrecoverable"). Indeed, this Court has
previously held that economic harm caused by a government agency
cannot be irreparable. Mylan Pharm., Inc. v. U.S.F.D.A., 23 F.
Supp. 3d 631, 645-46 (N.D.W.Va. 2014) (reasoning that Food and Drug
Administration did not cause irreparable harm when it granted
exclusivity to another generic drug manufacturer). But the binding
guidance in Sage is clear. The Fourth Circuit there dealt not only
with missing the relevant FERC deadline (Dkt. No. 113 at 6), but
also with "increased construction costs and losses from . . .
breach of gas supply contracts." Sage, 361 F.3d at 830.

Here, the FERC Certificate requires MVP to complete the
Project by October 13, 2020 (Dkt. No. 1-2 at 108), but MVP plans to
begin construction in February 2018 and place the pipeline in
service by December 2018 (Dkt. No. 70-4 at 11). At the evidentiary
hearing, MVP presented the testimony of Robert Joseph Cooper

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

("Cooper"), its Senior Vice President of Engineering and Construction, to establish irreparable harm.

Cooper testified that, during the course of MVP's multi-year effort to obtain FERC's permission to construct its pipeline, MVP entered into precedent agreements with shippers "to show evidence of the demand for the service the pipeline would provide" (Dkt. No. 105 at 87). FERC issued the final environmental impact statement ("EIS") regarding the Project on June 23, 2017 (Dkt. No. 1-2 at 52), after which MVP entered into its first master construction services agreement ("MSA") on July 6, 2017 (Dkt. No. 104-6 at 1). On October 10, 2017, prior to FERC's issuance of the Certificate, MVP made purchase orders under the MSA that encompassed several hundred miles of the Project. Id. at 67-132. FERC issued the Certificate on October 13, 2017, and on November 13 and November 22, 2017, MVP entered two additional MSAs and quickly made purchase orders covering the remaining 70 miles of the Project (Dkt. Nos. 1-2; 104-7; 104-8).

When MVP commences construction, the Project will proceed in 11 distinct segments along the pipeline's length; three of those segments are located in the Northern District. After felling trees on properties used for service facilities and access roads, as well

43

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

as those with endangered species, MVP's contractors will work in a "linear" fashion to excavate and install pipeline along each of the 11 segments (Dkt. Nos. 5-1 at 4-5; 105 at 100-01). If MVP is forced to break from this method of construction, it will face financial penalties from its contractors (Dkt. No. 105 at 101). MVP's construction schedule hinges on the fact that certain tree clearing must be complete by March 31, 2018, to comply with regulations of the United States Fish and Wildlife Service that protect the habitat of bats and migratory birds (Dkt. No. 5-1 at 6).

If MVP does not complete the necessary tree clearing by that time, it will be unable to do so until November 15, 2018. MVP claims that delaying the entire Project until November 2018 will result in the loss of $40 to $50 million in revenue each month that the Project is not in service, up to $200 million in delay and cancellation fees, and $40 to $45 million in otherwise unnecessary administrative and carrying costs (Dtk. Nos. 70 at 11; 105 at 117-18). In addition, being forced to construct the pipeline during the winter months would increase costs and require additional environmental measures (Dkt. No. 105 at 115).

Even assuming that these economic harms can be characterized as irreparable, the defendants contend that they are not likely to

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

occur (Dkt. No. 70 at 14). They argue, among other things, that 1) MVP's claim for lost revenue is actually only delayed revenue because its 20-year transportation agreement does not commence until service begins; 2) most revenue will come from affiliate companies, so there is no actual loss; 3) MVP can mitigate contractor penalties by directing work on other portions of the pipeline or invoking force majeure clauses; and 4) administrative carrying costs result from MVP's schedule or would be incurred to remain in business (Dkt. No. 70 at 14-24).

These arguments relate only to the degree of irreparable economic harm; that MVP might be capable of mitigating its unrecoverable losses does not render them irrelevant. For instance, in Sage, the pipeline company estimated that it would lose only "$5 million if construction delay caused it to breach its contractual obligations to supply gas." 361 F.3d at 829. The Fourth Circuit found this harm to be irreparable when coupled with the reality that delayed construction would mean the pipeline's "inability to satisfy [its] commitments" and lead to "negative impacts on . . . customers and the consumers they serve." Id. Therefore, even a drastically lower amount of loss than estimated by MVP is irreparable in light of the effect that delayed construction would

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

have on end users. Accord Sabal Trail, No. 3:16-cv-173, 2016 WL
8900100, at *11 (finding $1,048,000 loss to be significant despite
being "such a small percentage of the overall project cost").

Finally, the defendants argue that the Court should discount
the urgency of MVP's request because it could still meet FERC's
deadline if it commenced construction in November 2018 (Dkt. No.
117 at 2). In other words, the Court should narrowly analyze
whether MVP needs access to their properties now or whether it
still can meet FERC's deadline if granted access later. This
argument fails to account for the fact that MVP will breach its
contractual obligations if it does not commence construction in
February 2018, and that MVP's decision to set such a schedule was
entirely reasonable under the circumstances.

Of course, an injunction is usually inappropriate where the
movant fails to show "that [it] availed [itself] of opportunities
to avoid the injuries of which [it] now complain[s]," Di Biase, 872
F.3d at 235, and courts have declined to consider harms that are
self-inflicted by the moving party. See, e.g., Salt Lake Tribune
Publ'g Co., LLC v. AT&T Corp., 320 F.3d 1081, 1106 (10th Cir.
2003); Davis v. Mineta, 302 F.3d 1104, 1116 (10th Cir. 2002) ("As
we have previously concluded, the state entities involved in this

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

case have 'jumped the gun' on the environmental issues by entering
into contractual obligations that anticipated a pro forma
result."); Livonia Props. Holdings, LLC v. 12840-12976 Farmington
Road Holdings, 399 F. App'x 97, 104 (6th Cir. 2010) ("[S]elf-
inflicted harm is not the type that injunctions are meant to
prevent.").

As have other courts, this Court recognizes that a FERC-
governed, natural-gas company's "self-inflicted" contracts and
deadlines are not driven solely by its desire to place the pipeline
into service as quickly as possible. See Transcon., 1:16cv02991,
2016 WL 8861714, at *9. That the FERC deadline is not yet looming,
however, does not negate the reality that the MVP Project is and
always has been time sensitive. See, e.g., Sage, 361 F.3d at 830
("ETNG could not meet FERC's deadline without immediate
possession."); Columbia Gas, No. 2:17cv70, 2017 WL 383214, at *7
(S.D. Ohio Mar. 3, 2017) (acknowledging that the prospect of
missing FERC's deadline is irreparable harm). The process by which
natural-gas companies obtain approval and construct under the NGA
necessitates forethought and a degree of speculation.

For instance, MVP entered shipping contracts to demonstrate to
FERC that there was a market demand for its Project (Dkt. No. 105

47

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

at 87), and it made the business decision to secure its primary contractor for the Project in advance of receiving FERC approval (Dkt. No. 104-6). It did so to ensure that necessary skilled workers and general contractors would be available to work on the Project, considering "it likely that it would be difficult or perhaps impossible to get the workers" if it delayed (Dkt. No. 105 at 110-11). In fact, throughout the bidding process, MVP faced a smaller and more expensive pool of contractors. Id. at 111-12. Undoubtedly, MVP decided to accept the risk that FERC would not approve its Project, but FERC did approve the Project, and MVP is appropriately prepared for construction.

In addition, other practical considerations underscore the wisdom of MVP's decision to issue purchase orders and prepare for construction. Especially given the likelihood of trials on just compensation, this litigation may not be complete well enough in advance of the FERC deadline. Testimony at the evidentiary hearing established that MVP can construct the Project in approximately 12 months. Given that the FERC Certificate requires MVP to complete the Project by October 2020 (Dkt. No. 1-2 at 108), and assuming there are no other delays, MVP must commence construction no later than the time the tree-clearing window opens in November 2019. The

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

prospect that this litigation could be complete in that time,
rendering equitable relief entirely unnecessary, is "unfounded" and
"fanciful." <u>Columbia Gas</u>, No. ELH-15-3462, 2016 WL 1248670, at *15.

Currently, there are 30 defendants and 13 parcels of land at
issue in the case. Some defendants and parcels may be joined for
trial on just compensation, but requiring MVP to forego equitable
relief would necessitate several trials before construction could
begin. "It is not at all likely that this Court could accommodate,
in the requisite time, the need for multiple trials, given the
Court's busy docket." <u>Id.</u> Even if the Court's other obligations
were less pressing, it is possible that "some or all of the
Landowners may appeal the outcome of the trials, which could add to
the delay." <u>Id.</u> (providing example of case that remained pending on
appeal more than two years after its original filing).[12]

---

[12] Moreover, contrary to the defendants' argument, "lack of
FERC approval" is not the reason that MVP might be delayed (Dkt.
No. 113 at 17). Cooper testified that MVP cannot request approval
to proceed along the entire length of the Project until it has the
legal authority to access the necessary property (Dkt. No. 106 at
32) ("[I]t's my understanding in that case they're not going to let
me go to work on the properties I don't have access to.").

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

**C.   The balance of equities tips in MVP's favor, and an injunction
is in the public interest.**

The third and fourth elements of the preliminary injunction
test require MVP to establish clearly that the balance of equities
tips in its favor and an injunction is also in the public interest.
Winter, 555 U.S. at 20. In cases involving significant public
interest, courts may "consider the balance of the equities and the
public interest factors together." As the Fourth Circuit has
explained:

> Even if Plaintiffs are likely to suffer irreparable harm
> in the absence of a preliminary injunction, we still must
> determine that the balance of the equities tips in their
> favor, "pay[ing] particular regard for the public
> consequences in employing the extraordinary remedy of
> injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305,
> 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). This is
> because "courts of equity may go to greater lengths to
> give 'relief in furtherance of the public interest than
> they are accustomed to go when only private interests are
> involved.'" E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808,
> 826 (4th Cir. 2004) (quoting Virginian Ry. Co. v. Sys.
> Fed'n No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed.
> 789 (1937)).

Int'l Refugee Assistance Project v. Trump, 857 F.3d 554, 602 (4th
Cir. 2017). Especially in light of the significant public interest
at issue, the irreparable harm that MVP will likely suffer
outweighs the effect of an injunction on the defendants.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Some defendants argue that MVP will significantly and irreparably burden their property if permitted early access (Dkt. Nos. 70 at 28-32; 71 at 11-12).[13] They acknowledge, however, that completion of the Project will have the same impact on their property whether MVP is granted immediate access or commences construction only after landowners have received just compensation. The fact that an injunction will deprive the defendants of their land now rather than later is not "a type of an inherent harm that is irreparable," but rather is an ordinary burden of citizenship. Sage, 361 F.3d at 829. At bottom, it is the NGA and the FERC Certificate that are responsible for the defendants' injuries, and delaying access until just compensation is paid will do nothing to alleviate those burdens. See id. ("This is simply a timing argument . . . ."); Columbia Gas, 768 F.3d at 316 ("The Landowners have not stated any concrete injury other than the loss of the easements over their land, which will definitely occur, whether or not we grant Columbia immediate possession of the easements.").

_____

[13] At the evidentiary hearing, the defendants presented testimony from a hydrogeologist and representatives of two affected landowners regarding the effects of the Project on various properties to be condemned (Dkt. No. 107).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Nonetheless, in light of pending challenges to the Project, the defendants argue that the Court should not accelerate the harm that MVP will cause to their property. They point to the fact that the FERC Certificate was a 2-1 decision, which issued over the dissenting commissioner's opinion that the Project may not be in the public interest (Dkt. No. 1-2 at 137). Moreover, they represent that requests for rehearing and a stay are pending before FERC, which will remain subject to appeal by the adversely affected party (Dkt. No. 69 at 7-8). The defendants contend that, depending on the outcome of these proceedings, the Project may yet be delayed, modified, or nullified in its entirety. Given the remaining permits and approvals that MVP must obtain (Dkt. No. 1-2 at app. C), they speculate that the Project possibly may never commence or be completed (Dkt. No. 70 at 31-32).

The defendants advance these arguments, hoping to distinguish the instant case from the circumstances of Sage, where there was no indication that the Certificate at issue remained subject to challenge before FERC or a court of appeals. 361 F.3d 808. Even taking notice of this distinction, the Court is not persuaded by the defendants' arguments. As discussed, FERC did not condition MVP's exercise of eminent domain under the Certificate on its

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

fulfillment of any environmental requirement, and it has not stayed the Certificate in light of pending requests for rehearing. Although the defendants contend that FERC's tolling orders are improper (Dkt. No. 70 at 38-40), they may not challenge those procedures in this Court, but must appeal to the circuit court. Both FERC and the court of appeals are fully aware that, so long as the Certificate remains in effect, MVP may seek equitable relief in this Court.

With regard to the public interest, the defendants raise various concerns about the importance of their Fifth Amendment rights, environmental permits that have yet to be obtained, and the Project's effect on cultural interests (Dkt. No. 70 at 35-38). For the most part, these are matters upon which FERC has already passed judgement or that should be raised before FERC, and the Court affords them little weight.

Western Pocahontas also argues that it and other parties, including the public at large, will be harmed by an injunction because MVP intends to trespass on mineral interests that it has not condemned (Dkt. No. 115 at 17-18, 23-24). Indeed, the Court is troubled by the suggestion that MVP's Project will affect such mineral interests. It would be impractical, however, to litigate

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

mineral ownership issues along the entire Project to determine
whether immediate access is in the public interest. Moreover, even
if Western Pocahontas had presented evidence of other mineral
owners, the balance of equities tips in MVP's favor here too:
unlike the irreparable harm caused by delay, parties injured by
trespass may pursue legal action against MVP. Cf. Di Biase, 872
F.3d at 230 (reasoning that economic harms are not irreparable if
they can be recovered).

There simply is no reason to depart from the Fourth Circuit's
reasoning in Sage:

> Congress passed the Natural Gas Act and gave gas
> companies condemnation power to insure that consumers
> would have access to an adequate supply of natural gas at
> reasonable prices. As the district court observed, FERC
> conducted a careful analysis of the . . . [p]roject and
> determined that the project will promote these
> congressional goals and serve the public interest. The
> project serves the public interest because, among other
> things, it will bring natural gas to portions of
> southwest Virginia for the first time. This will make gas
> available to consumers, and it will help in the efforts
> of local communities to attract much-needed new business.
> On a larger scale, the pipeline will make gas available
> for electric power generation plants. A delay in
> construction would postpone these benefits.

Sage, 361 F.3d at 830 (internal citation omitted).[14]

_____

[14] Of course, the Court is cautious in applying the reasoning
in Sage regarding public interest. The Fourth Circuit's former
reasoning Blackwelder did not require courts to consider public

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Here, FERC concluded that "the public at large will benefit from increased reliability of natural gas supplies. Furthermore, upstream natural gas producers will benefit from the project by being able to access additional markets for their product" (Dkt. No. 1-2 at 28). The Court will not second-guess FERC's determination that MVP's project will benefit the public need for natural gas as the defendants request (Dkt. No. 70 at 34-35); FERC possesses the expertise necessary to make that determination. There can be no dispute that delaying MVP's completion of the project will delay the introduction of the benefits identified by FERC. Moreover, expediting construction will also hasten the creation of approximately 6,000 temporary jobs and millions of dollars in yearly property taxes (Dkt. Nos. 105 at 110; 106 at 6).

In summary, the Court has carefully considered each of the four factors articulated in <u>Winter</u>, and has given them heightened scrutiny in light of MVP's request for a mandatory preliminary injunction. MVP has carried its burden to clearly establish that it will be irreparably harmed in the absence of a preliminary

---

interest "at length," while <u>Winter</u> requires that courts "pay particular regard for the public consequences." <u>Real Truth About Obama, Inc.</u>, 575 F.3d at 347. In this case, however, the "public consequences" all weigh in favor of an injunction.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

injunction, that this harm is not outweighed by those concerns
identified by the defendants, and that granting immediate access is
in the public interest. Therefore, the Court **GRANTS** MVP's motion
for immediate access and possession of the easements at issue.

### VII. CASH DEPOSIT AND BOND

Having determined that granting immediate access is
appropriate in this case, the Court must determine the conditions
under which such access should be granted, bearing in mind the
necessity of giving adequate provision to the defendants.

**A.    The Kincheloe Properties**

With regard to the Kincheloe properties, the Court will
require MVP and Western Pocahontas to submit further information
prior to permitting physical possession. As discussed, although not
named as a defendant with regard to the Kincheloe properties,
Western Pocahontas claims an interest in the easements and will be
entitled to present evidence regarding just compensation. Western
Pocahontas claims that the Project generally will deprive it of
$8,630,847 in coal royalty in the Northern District, which
apparently encompasses far more property than is at issue in this
case, while MVP claims only that it is not condemning the rights to

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

the coal estate. Neither of these arguments is sufficient to allow the Court to determine an appropriate security.

Therefore, MVP and Western Pocahontas are each **ORDERED** to file supplemental briefs no later than 14 days following entry of this Memorandum Opinion and Order. These briefs shall be limited to ten pages in length, and shall set forth the party's position regarding the value of the interest that Western Pocahontas claims in the easements over the Kincheloe properties at issue. The parties are expected to support their assignment of value with appropriate exhibits.

**B.     The Remaining Properties**

As to the remaining properties, MVP may immediately access and possess the relevant easements after the following conditions have been satisfied:

1)     Not later than seven (7) days after entry of this Memorandum Opinion and Order, MVP shall submit a separate proposed order for each of the properties, granting MVP the immediate right of entry as to the easements in the complaint and the FERC Certificate and also containing any requirements set forth in the FERC Certificate that are unique to that parcel of land. The proposed orders need not contain general requirements

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

applicable to all parcels. MVP shall serve a copy of each proposed order on counsel for the affected landowner(s) or on any affected <u>pro se</u> defendant.[15] If the landowner objects to the order's form or content, the objection must be filed in writing with the Court not later than seven (7) days after service of the proposed order. If no objection is filed within that time, and the order is sufficient and proper, the Court may enter the order granting immediate possession without further notice.

2) Pursuant to the Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(l), the right to immediate possession of the easements on these properties is contingent upon MVP satisfying two requirements as to security. First, although the Court has concluded that a cash deposit is not required, abiding by the provisions of Fed. R. Civ. P. 71.1(j) will assist in rendering adequate provision to the defendants in this case. Therefore, MVP must deposit with the Clerk of Court

---

[15] Although several defendants remain unrepresented, none has made an appearance <u>pro se</u>.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

("Clerk") a certified check in an amount of three times the
appraised amount for each of the easements sought.[16]

3) Second, MVP shall obtain and post a surety bond in the total
amount of two times the appraised amount for the easements
sought. The bond shall be conditioned on MVP's payment of any
and all final compensation damages awarded in excess of the
deposited amount, and if such payments are made, then the bond
shall be null and void upon full payment having been made as
to all of the properties.

4) Both the multiplier for the deposit and the bond take into
account Rice's criticism of Holmes's appraisal report,
particularly the fact that he found it unreliable and that the
ultimate Yellow Book appraisal in this case will be more
thorough. The total value is designed to serve as sufficient
security to protect the interests of the landowners in the
event any just compensation awarded for one or more of the
easements exceeds the appraised amount for such property or

---

[16] For easements that MVP has appraised as worth $3,000 or
less, MVP shall nonetheless base the deposit and bond on a presumed
value of $3,001. 15 U.S.C. § 717f(h) (granting jurisdiction over
actions where the "amount claimed by the owner of the property to
be condemned exceeds $3,000").

properties. The multiplied value, the bond amount, or the two combined, shall not be construed as any indication of the floor or ceiling of the ultimate amount of just compensation, if any, to which any interest-holder is entitled. Instead, the eventual compensation award by this Court, a jury, or a compensation commission may be lower, higher, or the same as the amount MVP is required to provide as security.

5)   MVP shall remit the deposit amounts to the Clerk for deposit into the registry of this Court. The Clerk shall deposit the amounts received into the registry of this Court and then, as soon as the business of the Clerk's office allows, the Clerk shall deposit these funds into the interest-bearing Court Registry Investment System administered by the Administrative Office of the United States Courts as Custodian, pursuant to Fed. R. Civ. P. 67.

6)   MVP shall also file, at the time it remits any deposit or deposit(s), a chart broken down by easement that identifies: (i) each appraised property for which funds are being deposited; (ii) the corresponding MVP parcel numbers; (iii) the corresponding paragraph numbers in the amended complaint; (iv) the amount of the deposit for that specific property

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

(which will be three times the appraised amount); (vi) the amount of the bond that relates to that specific property (which will be two times the appraised amount); and (vii) all persons or entities who own an interest in the property and the percentage of each person's interest. The information shall also be emailed to the Court in an Excel spreadsheet format. If any party disputes the accuracy of any information in the chart, he shall file an objection not later than seven days after service of the chart. Additionally, all parties – including MVP and any defendants who have an interest in any of the deposited funds – have a continuing duty, until the conclusion of all proceedings, to advise the Court if the information in any filed chart changes. This includes, in particular, a duty to advise the Court if there is any change for any parcel in the number of owners or the percentages of their ownership interests.

7) Pursuant to Fed. R. Civ. P. 71.1(j)(2), the deposit of any funds for an identified defendant's property shall constitute MVP's agreement that the interest-holder can access up to the base amount of the appraisal or one-third of the deposited amount, whichever is greater. Such withdrawal is at the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

landowner's peril, and all defendants are advised that, if the ultimate compensation award is less than the amount withdrawn, the interest-holder will be liable for the return of the excess with appropriate interest. If multiple defendants claim an interest in any of the easements, each defendant claiming an interest can withdraw only its proportionate share of the funds identified for that easement and attributable to its claimed interest.

8)   Each of the defendants shall be entitled to draw from one-third of the funds deposited by MVP with the Clerk its ownership share of the amount of estimated just compensation deposited by MVP for the easement which burdens lands in which such defendant owns or claims an interest, subject to the warnings above, and provided that each such defendant satisfies all conditions of this Memorandum Opinion and Order and any other direction of the Court. Furthermore, such defendants shall be entitled to interest calculated pursuant to 28 U.S.C. § 1961 from and after the date of entry of this Memorandum Opinion and Order on the difference between the principal amount deposited with the Court by MVP and the amount of just compensation determined by the Court, if any,

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

if such determination of just compensation to be paid exceeds
the amount deposited by MVP.

9)   A defendant who wishes to draw on the deposited funds shall
file a motion for disbursement of funds with the Court and
shall include a certificate of service evidencing service of
the motion on all other persons with a property interest in
the same parcel or easement, if any. Any person objecting to
the disbursement shall have fourteen days to file a written
objection with the court. The Court will then resolve any
objections and issue an order on the withdrawal request. If
there are no other persons with an interest in the property,
disbursement will be permitted only by a separate order of the
Court, but the period for objections will not apply.

### VII. CONCLUSION

For the reasons discussed, the Court:

1)   **DENIES** the Motion for Stay of Proceedings (Dkt. No. 31);

2)   **GRANTS** MVP's Motion to Strike (Dkt. No. 28);

3)   **DENIES AS MOOT** Defendants' Motion to Dismiss (Dkt. No.
23-1);

4)   **GRANTS** MVP's Motion for Partial Summary Judgment and
Immediate Access to and Possession of the Easements

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY
[DKT. NO. 31], GRANTING MOTION TO STRIKE [DKT. NO. 28], DENYING
AS MOOT MOTION TO DISMISS [DKT. NO. 23-1], AND GRANTING MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IMMEDIATE ACCESS [DKT. NO. 5]**

Condemned for Construction of the MVP Project (Dkt. No. 5);

5) **DIRECTS** MVP and Western Pocahontas to file further information regarding the Kincheloe properties as set forth above; and

6) **DIRECTS** MVP to deposit funds and a surety bond prior to accessing and taking possession of the remaining properties as set forth above.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record.

DATED: February 2, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE