**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 18-1159**

───────────

MOUNTAIN VALLEY PIPELINE, LLC,

            Plaintiff - Appellee,

    v.

6.56 ACRES OF LAND, OWNED BY SANDRA TOWNES POWELL, Montgomery
County Tax Map Parcel No. 015900 and being MVP Parcel No. VA-MO-3370; 1.81
ACRES OF LAND, OWNED BY ROBERT M. JONES AND DONNA THOMAS
JONES, Montgomery County Tax Map Parcel No. 024588 and being MVP Parcel No.
VA-MO-5511; 1.29 ACRES OF LAND, OWNED BY ROBERT M. JONES AND
DONNA THOMAS JONES, Montgomery County Tax Map Parcel No. 024591 and
being MVP Parcel No. VA-MO-5512; 0.52 ACRES OF LAND, OWNED BY EMILIE
M. OWEN AND RICHARD CLARK OWEN, Franklin County Tax Map Parcel No.
0380002204B and being MVP Parcel No. VA-FR-4129 (AR FR-294),

            Defendants - Appellants.

───────────

Appeal from the United States District Court for the Western District of Virginia, at
Roanoke.  Elizabeth Kay Dillon, District Judge.  (7:17-cv-00492-EKD)

───────────

**No. 18-1165**

───────────

MOUNTAIN VALLEY PIPELINE, LLC,

            Plaintiff - Appellee,

    v.

TERESA D. ERICKSON, POA for Gerald Wayne Corder (Parcel ID NO. 20-362-20. An
Easement to construct, operate and maintain a 42-inch gas transmission line across

properties in the counties of Braxton, Lewis, Harrison, Webster, and Wetzel, WV; LORENA B. KRAFFT, POA for Randall N. Corder (Parcel ID NO. 20-362-21. An Easement to construct, operate and maintain a 42-inch gas transmission line across properties in the counties of Braxton, Lewis, Harrison, Webster, and Wetzel, WV,

        Defendants - Appellants.

———————————

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Irene M. Keeley, Senior District Judge.  (1:17-cv-00211-IMK)

———————————

**No. 18-1175**

———————————

MOUNTAIN VALLEY PIPELINE, LLC,

        Plaintiff - Appellee,

    v.

0.335 ACRES OF LAND, OWNED BY GEORGE LEE JONES, Giles County Tax Map Parcel No. 47-1-1 and being MVP Parcel No. VA-GI-200.044; 0.65 ACRES OF LAND, OWNED BY MICHAEL S. HURT AND MARY FRANCES K. HURT, Franklin County Tax Map Parcel No. 0380002204A and being MVP Parcel No. VA-FR-4130 (AR FR-294); 1.52 ACRES OF LAND, OWNED BY VERNON V. BEACHAM, SR. AND VERNON V. BEACHAM, II, Giles County Tax Map Parcel No. 44A-1-34 and being MVP Parcel No. VA-GI-051; 2.83 ACRES OF LAND, OWNED BY VERNON V. BEACHAM, SR. AND VERNON V. BEACHAM, II, Giles County Tax Map Parcel No. 44A-1-33 and being MVP Parcel VA-GI-052; 4.88 ACRES OF LAND, OWNED BY CLARENCE B. GIVENS AND KAROLYN W. GIVENS, Giles County Tax Map Parcel No. 47-9 and being MVP Parcel No. VA-GI-200.041; 2.01 ACRES OF LAND, OWNED BY GEORGE LEE JONES, Giles County Tax Map Parcel No. 47-1-2 and being MVP Parcel No. VA-GI-200.045; 2.09 ACRES OF LAND, OWNED BY STEVEN C. HODGES AND JUDY R. HODGES, Craig County Tax Map Parcel No. 120-A-10 and 120-A-10A and being MVP Parcel No. VA-CR-200.047; 0.66 ACRES OF LAND, OWNED BY GORDON WAYNE JONES AND DONNA W. JONES, Craig County Tax Map Parcel No. 120-A-13 and being MVP Parcel No. VA-CR-200.049; 0.71 ACRES OF LAND, OWNED BY ROANOKE VALLEY 4-WHEELERS ASSOCIATION, Montgomery County Tax Map Parcel No. 031198 and being MVP Parcel No. VA-MO-4264 (AR-MN-276); 1.53 ACRES OF LAND, OWNED BY ROANOKE VALLEY 4-WHEELERS ASSOCIATION, Montgomery County Tax Map Parcel No. 016068 and being MVP Parcel No. VA-MO-4265 (AR MN-276); 1.53 ACRES OF LAND, OWNED

BY STEPHEN W. BERNARD AND ANNE W. BERNARD, Franklin County Tax Map Parcel No. 0370001901 and being MVP Parcel No. BVA-FR-13; 5.88 ACRES OF LAND, OWNED BY WENDELL WRAY FLORA AND MARY MCNEIL FLORA, Franklin County Tax Map Parcel No. 0380002000 and being MVP Parcel No. VA-FR-017.21; 3.70 ACRES OF LAND, OWNED BY MICHAEL S. HURT AND MARY FRANCES K. HURT, Franklin County Tax Map Parcel No. 0380002204 and being MVP Parcel No. VA-FR-017.25; 1.97 ACRES OF LAND, OWNED BY KEITH M. WILSON AND MARY K. WILSON, Franklin County Tax Map Parcel No. 0370009906 and being MVP Parcel No. VA-FR-017.44; 6.50 ACRES OF LAND, MORE OR LESS, OWNED BY NEW RIVER CONSERVANCY, INC., Located in Giles County, Virginia being a portion of Giles County Tax Map Parcel No. 29-25B and being MVP Parcel No. VA-GI-035,

                    Defendants - Appellants.

                    ———————————

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth Kay Dillon, District Judge.  (7:17-cv-00492-EKD)

                    ———————————

                    **No. 18-1181**

                    ———————————

MOUNTAIN VALLEY PIPELINE, LLC,

                    Plaintiff - Appellee,

          v.

0.01 ACRES OF LAND, OWNED BY BENNY L. HUFFMAN, Giles County Tax Map Parcel No. 46-25 B and being MVP Parcel No. VA-GI-5779; 0.01 ACRES OF LAND, OWNED BY JEREMY JOSEPH RICE AND MICHELLE RENEE RICE, Roanoke County Tax Map Parcel No. 111.00-01-58.00-0000 and being MVP Parcel No. VA-RO-5627; 0.01 ACRES OF LAND, OWNED BY ROY A. STEVENS, Franklin County Tax Map Parcel No. 0440018800 and being MVP Parcel No. VA-FR-5496; 0.02 ACRES OF LAND, OWNED BY DANIEL G. MYERS AND DEBORAH L. MYERS, Franklin County Tax Map Parcel No. 0440019801 and being MVP Parcel No. VA-FR-5502; 0.04 ACRES OF LAND, OWNED BY BRUCE M. WOOD AND JENNIFER M. WOOD, Franklin County Tax Map Parcel No. 0440200600 and being MVP Parcel No. VA-FR-5791; 2.75 ACRES OF LAND, OWNED BY HELENA DELANEY TEEKELL, TRUSTEE OF THE HELENA DELANEY TEEKELL TRUST, Craig County Tax Map Parcel No. 120-A-12 and being MVP Parcel No. VA-CR-200.048; 2.81 ACRES OF LAND, OWNED BY ROBERT W. CRAWFORD OR PATRICIA D. CRAWFORD,

TRUSTEES UNDER THE CRAWFORD LIVING TRUST, AND ANITA NEAL HUGHES, Craig County Tax Map Parcel No. 121-A-15 and being MVP Parcel No. VA-CR-200.053; 2.60 ACRES OF LAND, OWNED BY HELENA DELANEY TEEKELL, TRUSTEE OF THE HELENA DELANEY TEEKELL TRUST, Craig County Tax Map Parcel No. 120-A-14A and being MVP Parcel No. VA-CR-5343; 0.15 ACRES OF LAND, OWNED BY DONALD W. LONG AND EVELYN W. LONG, Montgomery County Tax Map Parcel No. 021560 and being MVP Parcel No. BVMO-25; 0.07 ACRES OF LAND, OWNED BY GEORGE A. CRAIGHEAD AND HELEN P. CRAIGHEAD, Montgomery County Tax Map Parcel No. 016298 and being MVP Parcel No. VA-MO-011; 1.90 ACRES OF LAND, OWNED BY JOSEPH PATRICK TOMELTY, Montgomery County Tax Map Parcel No. 013819 and being MVP Parcel No. VA-MO-060; 0.89 ACRES OF LAND, OWNED BY DONALD W. LONG AND EVELYN W. LONG, Montgomery County Tax Map Parcel No. 021559 and being MVP Parcel No. VA-MO-062; 0.392 ACRES OF LAND, OWNED BY TRAVIS SCOTT LANCASTER AND TRACY LYNN TAYLOR, Montgomery County Tax Map Parcel No. 033280 and being MVP Parcel No. VA-MO-064 (AR-MN-271); 23.74 ACRES OF LAND, OWNED BY MARK W. CRONK, ALISON G. CRONK AND THE NATURE CONSERVANCY, Roanoke County Tax Map Parcel No. 093.00-01-44.00-0000 and being MVP Parcel No. VA-RO-038; 1.89 ACRES OF LAND, OWNED BY TRUSTEES OF EVANGEL FOURSQUARE CHURCH, Roanoke County Tax Map Parcel No. 093.00-01-47.00-0000 and being MVP Parcel No. VA-RO-039; 5.38 ACRES OF LAND, OWNED BY LUCY A. PRICE, Franklin County Tax Map Parcel No. 0240003400 and being MVP Parcel No. VA-FR-008; 3.11 ACRES OF LAND, OWNED BY RUSSELL E. CALLAWAY AND HEIDE K. CALLAWAY, Franklin County Tax Map Parcel No. 0240005400 and being MVP Parcel No. VA-FR-015.02; 5.93 ACRES OF LAND, OWNED BY CHARLES FREDERICK FLORA AND STEPHANIE M. FLORA, Franklin County Tax Map Parcel No. 0380002002 and being MVP Parcel No. VA-FR-017.20; 0.07 ACRES OF LAND, OWNED BY DALE E. ANGLE AND MARY A. ANGLE, TRUSTEES OF THE DALE E. ANGLE AND MARY A. ANGLE JOINT REVOCABLE TRUST, Franklin County Tax Map Parcel No. 0440006400 and being MVP Parcel No. VA-FR-077.01; 2.14 ACRES OF LAND, OWNED BY DALE E. ANGLE AND MARY A. ANGLE, TRUSTEES UNDER THE DALE E. AND MARY A. ANGLE JOINT REVOCABLE TRUST, Franklin County Tax Map Parcel No. 0440006501 and being MVP Parcel No. VA-FR-078; 11.86 ACRES OF LAND, OWNED BY DONALD B. BARNHART, Franklin County Tax Map Parcel No. 0440007300 and being MVP Parcel No. VA-FR-081; 10.21 ACRES OF LAND, OWNED BY WILLIAM DAVID BOARD, JAMES R. BOARD, SUSAN BOARD MYERS, NANCY B. FLORA, AND KENNETH CRAIG BOARD, Franklin County Tax Map Parcel No. 0450006100 and being MVP Parcel No. VA-FR-128; 0.30 ACRES OF LAND, OWNED BY ROBERT ALAN PEGRAM, Franklin County Tax Map Parcel No. 0650401600 and being MVP Parcel No. VA-FR-155.01; 1.85 ACRES OF LAND, OWNED BY OYLER LAND AND LEASING, LLC, Franklin County Tax Map Parcel No. 0240004000 and being MVP Parcel No. VA-FR-4126 (AR FR-291); 0.83 ACRES OF LAND, OWNED BY SUSAN BOARD MYERS,

4

WILLIAM DAVID BOARD, KENNETH CRAIG BOARD, AND NANCY BOARD
FLORA, a/k/a William D. Board, Franklin County Tax Map Parcel No. 0450012003 and
being MVP Parcel No. VA-FR-4141 (AR FR-313); 0.56 ACRES OF LAND, OWNED
BY OWNED BY WILLIAM D. BOARD, Franklin County Tax Map Parcel No.
0450012005 and being MVP Parcel No. VA-FR-4277 (AR FR-313); 0.97 ACRES OF
LAND, OWNED BY WILLIAM DAVID BOARD, KENNETH CRAIG BOARD,
SUSAN B. MYERS, NANCY B. FLORA, AND JAMES R. BOARD, Franklin County
Tax Map Parcel No. 0450012001 and being MVP Parcel No. VA-FR-4278 (AR FR-313);
0.12 ACRES OF LAND, OWNED BY ANGELA L. MCGHEE AND FREDRICK C.
MCGHEE, Franklin County Tax Map Parcel No. 0370009905 and being MVP Parcel No.
VA-FR-5411; 0.07 ACRES OF LAND, OWNED BY RUSSELL W. LAWLESS,
Franklin County Tax Map Parcel No. 0370009907 and being MVP Parcel No. VA-FR-
5413; 0.04 ACRES OF LAND, OWNED BY RONALD B. EDWARDS, SR., GLORIA
MARTIN, TERRANCE EDWARDS, LINDA WHITE, RUBY PENN, JANIS E.
WALLER, CRYSTAL DIANE EDWARDS, AND PENNY EDWARDS BLUE, Franklin
County Tax Map Parcel No. 0660009502 and being MVP Parcel No. VA-FR-5434; 0.44
ACRES OF LAND, OWNED BY SHELBY A. LAW, Franklin County Tax Map Parcel
No. 0440200400 and being MVP Parcel No. VA-FR-5492; 3.15 ACRES OF LAND,
OWNED BY ROBERT WAYNE MORGAN AND PATRICIA ANN MORGAN,
Franklin County Tax Map Parcel No. 0440018700 and being MVP Parcel No. VA-FR-
5493; 3.11 ACRES OF LAND, OWNED BY JAMES GLYNWOOD HAYNES, JR.,
Franklin County Tax Map Parcel No. 0440020001 and being MVP Parcel No. VA-FR-
5504; 0.95 ACRES OF LAND, OWNED BY JAMES GLYNWOOD HAYNES, JR.,
Franklin County Tax Map Parcel No. 0440019500 and being MVP Parcel No. VA-FR-
5505; 0.38 ACRES OF LAND, OWNED BY JAMES GLYNWOOD HAYNES, JR.,
Franklin County Tax Map Parcel No. 0440019300 and being MVP Parcel No. VA-FR-
5507,

   Defendants - Appellants.

————————————

Appeal from the United States District Court for the Western District of Virginia, at
Roanoke.  Elizabeth Kay Dillon, District Judge.  (7:17-cv-00492-EKD)

————————————

**No. 18-1187**

————————————

MOUNTAIN VALLEY PIPELINE, LLC,

   Plaintiff - Appellee,

  v.

5

0.09 ACRES OF LAND, OWNED BY GARY HOLLOPTER AND ALLISON HOLLOPTER, Giles County Tax Map Parcel No. 30-4B and being MVP Parcel No. VA-GI-5310; 0.18 ACRES OF LAND, OWNED BY GEORGIA LOU HAVERTY, Giles County Tax Map Parcel No 30-4A and being MVP Parcel No. BVGI-10; 6.50 ACRES OF LAND, OWNED BY SIZEMORE INCORPORATED OF VIRGINIA, f/k/a National Committee for the New River, Giles County Tax Map Parcel No. 29-25B and being MVP Parcel No. VA-GI-035; 1.23 ACRES OF LAND, OWNED BY EAGLE'S NEST MINISTRIES, INC., Giles County Tax Map Parcel No. 29-25 and being MVP Parcel No VA-GI-035.01; 10.67 ACRES OF LAND, OWNED BY DOE CREEK FARM, INCORPORATED, Giles County Tax Map Parcel No.30-4 and being MVP Parcel No. VA-GI-049; 2.19 ACRES OF LAND, OWNED BY STEPHEN D. LEGGE, DAVID LEGGE, AND PHYLLIS J. LEGGE, Giles County Tax Map Parcel No. 44-3-3A and being MVP Parcel No. VA-GI-057; 5.25 ACRES OF LAND, OWNED BY MARY VIRGINIA REYNOLDS, SAMUEL HALE REYNOLDS, AND MARY SUTTON REYNOLDS, Giles County Tax Map Parcel No. 46-1-3 and being MVP Parcel No. VA-GI-097.01; 8.60 ACRES OF LAND, OWNED BY DOWDY FARM LLC, Giles County Tax Map Parcel No. 46-52 and being MVP Parcel No. VA-GI-4250; 0.22 ACRES OF LAND, OWNED BY DOWDY FARM, LLC, Giles County Tax Map Parcel No. 46-52 A. and being MVP Parcel No. VA-GI-5790; 10.26 ACRES OF LAND, OWNED BY SAMUEL HALE REYNOLDS AND MARY SUTTON REYNOLDS, Giles County Tax Map Parcel No. 46-1-2A and being MVP Parcel No. VA-GI-5922; 7.18 ACRES OF LAND, OWNED BY MICHAEL EDWARD SLAYTON, TRUSTEE OR MARGARET MCGRAW SLAYTON, TRUSTEE, MARGARET MCGRAW SLAYTON LIVING TRUST, Montgomery County Tax Map Parcel No. 024590 and being MVP Parcel No. VA-MO-3371; 0.22 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LENORA MONTUORI AND KRISTINA MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRUST, Roanoke County Tax Map Parcel No. 117.00-01-41.00-0000 and being MVP Parcel No. BVRO-12; 0.41 ACRES OF LAND, OWNED BY JAMES D. SCOTT AND KAREN B. SCOTT, Roanoke County Tax Map Parcel No. 093.00-01-34.01-0000 and being MVP Parcel No. VA-RO-030 (AR RO-281); 2.17 ACRES OF LAND, OWNED BY JAMES D. SCOTT AND KAREN B. SCOTT, Roanoke County Tax Map Parcel No. 093.00-01-33.00-0000 and being MVP Parcel No. VA-RO-042; 0.341 ACRES OF LAND, OWNED JAMES D. SCOTT AND KAREN B. SCOTT, Roanoke County Tax Map Parcel No. 093.00-01-33.01-0000 and being MVP Parcel No. VA-RO-043; 0.41 ACRES OF LAND, OWNED BY LENORA W. MONTUORI, Roanoke County Tax Map Parcel No. 110.00-01-54.00-0000 and being MVP Parcel No. VA-RO-058; 4.31 ACRES OF LAND, OWNED BY JAMES T. CHANDLER AND KATHY E. CHANDLER, Roanoke County Tax Map Parcel No. 111.00-01-62.01-0000 and being MVP Parcel No. VA-RO-060; 4.31 ACRES OF LAND, OWNED BY JAMES T. CHANDLER AND KATHY E. CHANDLER, Roanoke County Tax Map Parcel No 117.00-01-38.00-0000 and being MVP Parcel No. VA-RO-061; 1.91 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LENORA

MONTUORI AND KRISTIN MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRUST, Roanoke County Tax Map Parcel No. 117.00-01-43.02-0000 and being MVP Parcel No. VA-RO-062; 0.91 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LENORA MONTUORI AND KRISTINA MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRUST, Roanoke County Tax Map Parcel No. 117.00-01-43.00-0000, Being MVP Parcel No. VA-RO-063; 2.99 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LENORA MONTUORI AND KRISTINA MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRUST, Roanoke County Tax Map Parcel No. 117.00-01-46.00-0000 and Being Parcel No. VA-RO-064; 0.20 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LENORA MONTUORI AND KRISTINA MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRU, Roanoke County Tax Map Parcel No. 117.00-01-43.01-0000 and being MVP Parcel No. VA-RO-065; 0.19 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LENORA MONTUORI AND KRISTINA MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRUST, Roanoke County Tax Map Parcel No. 117.00-01-42.00-0000 and being MVP Parcel No. VA-RO-066; 2.43 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LEMORA MONTUORI AND KRISTINA MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRUST, Roanoke County Tax Map Parcel No. 117.00-01-45.00-0000 and being MVP Parcel No. VA-RO-067; 0.50 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LENORA MONTUORI AND KRISTINA MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRUST, Roanoke County Tax Map Parcel No. 117.00-01-41.01-0000 and being MVP Parcel No. VA-RO-4124; 0.33 ACRES OF LAND, OWNED BY LENORA W. MONTUORI AND LENORA MONTUORI AND KRISTINA MONTUORI HILLMAN, TRUSTEES OF THE ANTONIO MONTUORI FAMILY TRUST, Roanoke County Tax Map Parcel No. 117.00-01-41.02-0000 and being MVP Parcel No. VA-RO-4125; 8.21 ACRES OF LAND, OWNED BY OCCANNEECHI, INC., Franklin County Tax Map Parcel No. 0250004100 and being MVP Parcel No. VA-FR-017.11; 21.98 ACRES OF LAND, OWNED BY OCCANNEECHI, INC., Franklin County Tax Map Parcel No. 0380001501 and being MVP Parcel No. VA-FR-017.15; 8.67 ACRES OF LAND, OWNED BY JAMES D. SCOTT AND KAREN B. SCOTT, Roanoke County Tax Map Parcel No. 093.00-01-34.00-0000 and being MVP Parcel No. VA-RO-040,

Defendants - Appellants.

————————————

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth Kay Dillon, District Judge.  (7:17-cv-00492-EKD)

------------------

**No. 18-1242**

------------------

MOUNTAIN VALLEY PIPELINE, LLC,

      Plaintiff - Appellee,

    v.

0.09 ACRES OF LAND, OWNED BY LARRY BERNARD CUNNINGHAM AND CAROLYN A. CUNNINGAM, Roanoke County Tax Map Parcel No. 063.00-01-20.03-0000 and being MVP Parcel No. VA-RO-5781; 0.11 ACRES OF LAND, OWNED BY JUNE SMITH, RAY SMITH, PATRICIA S. DEVECHA, STEPHEN R. SMITH, BARRY SCOTT SMITH, DOUGLAS F. SMITH, DAVID L. SMITH, FRED APGAR, RUTH APGAR GLOCK, DONALD APGAR, GREGORY M. A, a/k/a Raymond Foster Smith, a/k/a Fred I. Apgar, a/k/a Frederick Apgar, a/k/a Gregory M. Apgar, a/k/a Angela H. Apgar, Unknown Heirs and Assigns of the Following June Smith, and Ray Smith, Roanoke Co. Tax Map Parcel No. 063.00-01-25.00-0000 and being MVP Parcel No. VA-RO-033; 0.14 ACRES OF LAND, OWNED BY UNKNOWN HEIRS OR ASSIGNS OF ANTHONY B. NOVITZKI AND JOANNE A. LOFARO, Franklin County Tax Map Parcel No. 0440206600 and being MVP Parcel No. VA-FR-5500; 4.90 ACRES OF LAND, OWNED BY BRENDA LYNN WILLIAMS, Giles County Tax Map Parcel No. 46-15 and being MVP Parcel No. VA-GI-200.019; 0.19 ACRES OF LAND, OWNED BY CLETUS WOODROW BOHON AND BEVERLY ANN BOHON, Montgomery County Tax Map Parcel No. 030271 and being MVP Parcel No. VA-MN-5233 (AR MN-278.01); 0.39 ACRES OF LAND, OWNED BY JAMES C. LAW AND CAROLYN D. LAW, Montgomery County Tax Map Parcel No. 032431 And being MVP Parcel No. VA-MN-5234 (AR MN-278.01); 2.08 ACRES OF LAND, OWNED BY DONALD D. APGAR AND MILDRED M. APGAR, Montgomery County Tax Map Parcel No. 000843 and being MVP Parcel No. VA-MO-012; 2.69 ACRES OF LAND, OWNED BY BRIAN DAVID GLOCK AND SUSAN ELIZABETH GLOCK BUCH, Montgomery County Tax Map Parcel No. 000844 and being MVP Parcel No. VA-MO-013; 2.74 ACRES OF LAND, OWNED BY CLETUS WOODROW BOHON AND BEVERLY ANN BOHON, Montgomery County Tax Map Parcel No. 017761 and being MVP Parcel No. VA-MO-022; 2.12 ACRES OF LAND, OWNED BY JAMES CABEL LAW AND CAROLYN DIANA EANES LAW, Montgomery County Tax Map Parcel No. 018808 and being MVP Parcel No. VA-MO-024; 4.67 ACRES OF LAND, OWNED BY JAMES CABEL LAW AND CAROLYN DIANA EANES LAW, Montgomery County Tax Map Parcel No. 011673 and being MVP Parcel No. VA-MO-025; 12.20 ACRES OF LAND, OWNED BY JUNE SMITH, RAY SMITH, PATRICIA S. DEVECHA, STEPHEN R. SMITH, BARRY SCOTT SMITH, DOUGLAS F. SMITH, DAVID L. SMITH, FRED

APGAR, RUTH APGAR GLOCK, GREGORY M. APGAR, AND ANG, a/k/a Raymond Foster Smith, a/k/a Fred I. Apgar, a/k/a Frederick I. Apgar, Unknown Heirs or Assigns of the Following June Smith, and Ray Smith, Montgomery Co. Tax Map Parcel No. 120001 and MVP Parcel No. VA-MO-084; 3.35 ACRES OF LAND, OWNED BY THOMAS W. TRIPLETT AND BONNIE B. TRIPLETT, Montgomery County Tac Map Parcel No. 024589 and being MVP Parcel No. VA-MO-5514; 2.07 ACRES OF LAND, OWNED BY PHYLLIS M. HUTTON, Montgomery County Tax Map Parcel No. 009443 and being MVP Parcel No. VA-MO-5515; 3.01 ACRES OF LAND, OWNED BY PHYLLIS M. HUTTON, Montgomery County Tax Map Parcel No. 026945 and being MVP Parcel No. VA-MO-5516; 6.86 ACRES OF LAND, OWNED BY JULIANA BERNHOLZ AND IRINA BERNHOLZ SIEGRIST, Montgomery County Tax Map Parcel No. 015895 and being MVP Parcel No. VA-MO-5526; 0.38 ACRES OF LAND, OWNED BY JAMES C. LAW AND CAROLYN D. LAW, Montgomery County Tax Map Parcel No. 002833 and being MVP Parcel No. VA-MO-5626; 4.03 ACRES OF LAND, OWNED BY MATTHEW D. ROLLIER AND DEANNA D. ROBINSON, Roanoke County Tax Map Parcel No. 102.00-01-12.00-0000 and Bring MVP Parcel No. BVRO-04; 0.47 ACRES OF LAND, OWNED BY BRUCE M. COFFEY AND MARY E. COFFEY, Roanoke County Tax Map Parcel No. 102.00-01-13.00-0000 and being MVP Parcel No. BVRO-05; 13.47 ACRES OF LAND, OWNED BY JOHN COLES TERRY, III, Roanoke County Tax Map Parcel No. 102.00-01-08.00-0000 and being MVP Parcel No. VA-RO-045; 8.37 ACRES OF LAND, OWNED BY FRANK H. TERRY, JR., JOHN COLES TERRY, III, AND ELIZABETH LEE TERRY, a/k/a Elizabeth Lee Reynolds, Roanoke County Tax Map Parcel No. 102.00-01-02.00-0000 and being MVP Parcel No. VA-RO-046; 1.40 ACRES OF LAND, OWNED BY MARY ELLEN RIVES, Roanoke County Tax Map Parcel No. 103.00-02-43.00-0000 and being MVP Parcel No. VA-RO-051; 1.85 ACRES OF LAND, OWNED BY JACQULINE J. LUCKI, Roanoke County Tax Map Parcel No. 102.00-01-14.00-0000 and being MVP Parcel No. VA-RO-052; 9.89 ACRES OF LAND, OWNED BY ELIZABETH LEE TERRY, a/k/a Elizabeth Lee Reynolds, Roanoke County Tax Map Parcel No. 110.00-01-44.00-0000 and being MVP Parcel No. VA-RO-054; 4.72 ACRES OF LAND, OWNED BY FRED W. VEST, Roanoke County Tax Map Parcel No. 110.00-01-56.00-0000 and being MVP Parcel No. VA-RO-056; 2.93 ACRES OF LAND, OWNED BY LOIS KING WALDRON AND LOIS MABEL WALDRON MARTIN, Roanoke County Tax Map Parcel No. 110.00-01-50.00-0000 and being MVP Parcel No. VA-RO-057; 2.05 ACRES OF LAND, OWNED BY HOWARD M. THOMPSON AND CHRISTINE W. THOMPSON, Roanoke County Tax Map Parcel No. 118.00-01-09.00-0000 and being MVP Parcel No. VA-RO-068; 0.94 ACRES OF LAND, OWNED BY MARTIN G. MORRISON AND PATRICIA A. BOYD, Roanoke County Tax Map Parcel No. 063.00-01-20.00-0000 and being MVP Parcel No. VA-RO-4115; 2.20 ACRES OF LAND, OWNED BY HILAH PARKS TERRY, FRANK H. TERRY, JR., ELIZABETH LEE TERRY, JOHN COLES TERRY III, GRACE MINOR TERRY, Unknown Heirs or Assigns of Frank H. Terry, Sr., Roanoke County Tax Map Parcel No. 103.00-02-01.00-0000 and being MVP Parcel No. VA-RO-4118 (AR RO-283); 0.28 ACRES OF LAND, OWNED BY JACQULINE J.

LUCKI, Roanoke County Tax Map Parcel No. 102.00-01-13.01-0000 and being MVP Parcel No. VA-RO-50; 0.32 ACRES OF LAND, OWNED BY GRACE MINOR TERRY, Roanoke County Tax Map Parcel No. 102.00-01-01.02-0000 and being MVP Parcel No. VA-RO-5149 (AR RO-279.01); 0.34 ACRES OF LAND, OWNED BY ROBIN B. AUSTIN AND ALLEN R. AUSTIN, Roanoke County Tax Map Parcel No. 110.00-01-45.00-0000 and being MVP Parcel No. VA-RO-5222 (AR RO-285); 0.33 ACRES OF LAND, OWNED BY ELIZABETH LEE TERRY, a/k/a Elizabeth Lee Reynolds, Roanoke County Tax Map Parcel No. 093.00-01-46.00-0000 and being MVP Parcel No. VA-RO-5228 (ATWS-1224); 0.31 ACRES OF LAND, OWNED BY REBECCA JANE DAMERON, Roanoke County Tax Map Parcel No. 111.00-01-61.00-0000 and being MVP Parcel No. VA-RO-5383; 0.15 ACRES OF LAND, OWNED BY FRANK W. HALE AND FLOSSIE I. HALE AND ROBERT MATTHEW HAMM AND AIMEE CHASE HAMM, Roanoke County Tax Map Parcel No. 110.00-01-56.01-0000 and being MVP Parcel No. VA-RO-5748; 0.26 ACRES OF LAND, OWNED BY LARRY BERNARD CUNNINGHAM AND CAROLYN A. CUNNINGHAM, Roanoke County Tax Map Parcel No. 063.00-01-21.00-0000 and being MVP Parcel No. VA-RO-5785; 1.38 ACRES OF LAND, OWNED BY ALVIN E. WRAY, LINDA L. WRAY, L. BENTON WRAY, JR., AND DIANE S. WRAY, Franklin County Tax Map Parcel No. 250002100 and being MVP Parcel No. VA-FR-017; 11.45 ACRES OF LAND, OWNED BY L. BENTON WRAY, JR., DIANE S. WRAY, ALVIN E. WRAY, AND LINDA L. WRAY, Franklin County Tax Map Parcel No. 0250002200 and being MVP Parcel No. VA-FR-017.02; 2.74 ACRES OF LAND, OWNED BY MARK A. PETTIPIECE AND TERESA J. PETTIPIECE, Giles County Tax Map Parcel No. 47-1-3 and being MVP Parcel No. VA-GI-200.046; 0.87 ACRES OF LAND, OWNED BY BOBBY I. JONES AND RICHARD WAYNE JONES REVOCABLE TRUST, RICHARD WAYNE JONES, TRUSTEE, Franklin County Tax Map Parcel No. 0430105200 and being MVP Parcel No. VA-FR-070.01; 1.60 ACRES OF LAND, OWNED BY SANDRA H. LANCASTER, Franklin County Tax Map Parcel No. 0430105000 and being MVP Parcel No. VA-FR-073; 3.70 ACRES OF LAND, OWNED BY DAVID J. WERNER, BETTY B. WERNER, IAN ELLIOTT REILLY, AND CAROLYN ELIZABETH REILLY, Franklin County Tax Map Parcel No. 0440004300 and being MVP Parcel No. VA-FR-076.01; 1.72 ACRES OF LAND, OWNED BY GUY W. BUFORD AND MARGARET S. BUFORD, Franklin County Tax Map Parcel No. 0440004400 and being MVP Parcel No. VA-FR-077; 0.292 ACRES OF LAND, OWNED BY GAIL DUDLEY SMITHERS AND GINGER K. SMITHERS, Franklin County Tax Map Parcel No. 0450008100 and being MVP Parcel No. VA-FR-113; 8.56 ACRES OF LAND, OWNED BY GAIL DUDLEY SMITHERS AND GINGER K. SMITHERS, Franklin County Tax Map Parcel No. 0450000902 and being MVP Parcel No. VA-FR-114; 8.60 ACRES OF LAND, OWNED BY GAIL DUDLEY SMITHERS, Franklin County Tax Map Parcel No. 0450001600 and being MVP Parcel No. VA-FR-117; 3.92 ACRES OF LAND, OWNED BY GAIL DUDLEY SMITHERS AND GINGER K. SMITHERS, Franklin County Tax Map Parcel No. 0450006800 and being MVP Parcel No. VA-FR-119; 0.32 ACRES OF LAND, OWNED BY GAIL DUDLEY SMITHERS, Franklin County Tax Map Parcel

No. 0450001500 and being MVP Parcel No. VA-FR-5151 (ATWS-1266); 0.15 ACRES OF LAND, OWNED BY RUSSELL R. BARKSDALE, JR., Franklin County Tax Map Parcel No. 0370009904 and being MVP Parcel No. VA-FR-5415; 4.14 ACRES OF LAND, OWNED BY MARK E. DANIEL AND ANGELA D. DANIEL, Franklin County Tax Map Parcel No. 0440011600 and being MVP Parcel No. VA-FR-5476; 7.82 ACRES OF LAND, OWNED BY THOMAS O. WHITE, JR., TRUSTEE OF THE BEVERLY A. MCLAUGHLIN TESTAMENTARY TRUST, Pittsylvania County Tax Map Parcel No. 1489-86-7542 and being MVP Parcel No. VA-PI-029.05; 1.23 ACRES OF LAND, OWNED BY JAMES M. GRUBBS, EVELENA GRUBBS ROUSE, AND ENZY GRUBBS ANDERSON, UNKNOWN HEIRS OR ASSIGNS OF JAMES M. GRUBB, a/k/a Evelyn Rouse, Pittsylvania County Tax Map Parcel Nos. 2436-05-4452 and 2436-05-2564 and being MVP Parcel No. VA-PI-104; 3.42 ACRES OF LAND, OWNED BY HENRY COX AND JANET DEGROFF, Montgomery County Tax Map Parcel No. 032870 and being MVP Parcel No. VA-MO-5520; 3.74 ACRES OF LAND, OWNED BY JEROME DAVID HENRY AND DORIS MARIE HENRY, Roanoke County Tax Map Parcel No. 110.00-01-46.00-0000 and being MVP Parcel No. VA-RO-055,

        Defendants - Appellants.

---

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth Kay Dillon, District Judge.  (7:17-cv-00492-EKD)

---

### No. 18-1300

---

MOUNTAIN VALLEY PIPELINE, LLC,

        Plaintiff - Appellee,

    v.

CHERYL L. BOONE, Parcel ID No. 7-7-27.2; KERRY N. BOONE, Parcel ID No. 7-7-27.2; ORUS ASHBY BERKLEY, Parcel ID No. 7-15A-13, 7-15A-13.1; TAMMY A. CAPALDO, Parcel ID No. 7-15-125; CARLA D. FOUNTAIN, Parcel ID No. 05-19-36, 05-19-24; DENNIS F. FOUNTAIN, Parcel ID No. 05-19-36, 05-19-24; ROBERT M. JARRELL, Parcel ID No. 7-11-15; DAVID ALLEN JOHNSON, Parcel ID No. 05-19-9; EVERETT JOHNSON, JR., Parcel ID No. 05-19-9; WAYNE JOHNSON, Parcel ID No. 05-19-9; MAURY JOHNSON, Parcel ID No. 05-19-9; ELISABETH TOBEY, Parcel ID No. 11-84-10; RONALD TOBEY, Parcel ID No. 11-84-10; PATRICIA J. WILLIAMS, Parcel ID No. 05-25-1.13,

Defendants - Appellants.

———————————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  John T. Copenhaver, Jr., Senior District Judge.  (2:17-cv-04214)

———————————

Argued:  September 25, 2018                         Decided:  February 5, 2019

———————————

Before GREGORY, Chief Judge, and WYNN and HARRIS, Circuit Judges.

———————————

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Wynn joined.

———————————

**ARGUED:**  Derek Owen Teaney, APPALACHIAN MOUNTAIN ADVOCATES, INC., Lewisburg, West Virginia; Christopher Stephen Johns, JOHNS & COUNSEL PLLC, Austin, Texas, for Appellants.  Wade Wallihan Massie, PENN, STUART & ESKRIDGE, Abingdon, Virginia; Nicolle Renee Snyder Bagnell, REED SMITH, LLP, Pittsburgh, Pennsylvania, for Appellee.  **ON BRIEF:**  Jeremy Hopkins, CRANFILL SUMNER & HARTZOG LLP, Raleigh, North Carolina, for Appellants in 18-1159 and 18-1242. Charles M. Lollar, LOLLAR LAW, PLLC, Norfolk, Virginia, for Appellants in 18-1159, 18-1242, and 18-1300.  Isak J. Howell, LAW OFFICE OF ISAK HOWELL, Roanoke, Virginia, for Appellants in 18-1165, 18-1175, and 18-1300.    Kevin DeTurris, BLANKINGSHIP & KEITH, P.C., Fairfax, Virginia, for Appellants in 18-1181.  Stephen J. Clarke, WALDO & LYLE, P.C., Norfolk, Virginia, for Appellants in 18-1187.  Mark E. Frye, Seth M. Land, PENN, STUART & ESKRIDGE, Abingdon, Virginia; Colin E. Wrabley, REED SMITH LLP, Pittsburgh, Pennsylvania, for Appellee.

———————————

PAMELA HARRIS, Circuit Judge:

In October 2017, the Federal Energy Regulatory Commission approved the application of Mountain Valley Pipeline, LLC, to construct a natural gas pipeline through West Virginia and Virginia. Building and maintaining that pipeline would require access to thousands of private properties, under which the pipeline would be buried. Accordingly, the Commission's approval permits Mountain Valley to obtain easements along the pipeline route through eminent domain where it cannot do so through private agreements.

Mountain Valley successfully negotiated easements allowing access onto the land of most of the affected landowners. To obtain the rest of the required easements, it initiated condemnation proceedings. Three district courts granted partial summary judgment to Mountain Valley, recognizing its right to take the easements. And because the eminent domain proceedings – including multiple trials to determine the amount of just compensation for each easement – would take years to complete, the courts also issued preliminary injunctions granting Mountain Valley immediate possession of the easements, so that it could begin construction without delay. To ensure that the landowners would be compensated fully, the district courts required Mountain Valley to post deposits, which the landowners could draw upon while the proceedings continued.

On appeal, the landowners do not dispute the grant of partial summary judgment to Mountain Valley, conceding that Mountain Valley has the substantive right to take easements by eminent domain. Thus, the only question before us is whether Mountain Valley may gain access to those easements now, or whether it must wait to start

construction until the district courts can sort out just compensation.  We hold that the district courts did not abuse their discretion in allowing Mountain Valley immediate possession, and therefore affirm the injunction orders.

## I.

### A.

In October 2015, Mountain Valley applied to the Federal Energy Regulatory Commission ("FERC" or the "Commission") for authorization to construct a 303.5-mile-long, 42-inch-diameter pipeline from Wetzel County, West Virginia, to Pittsylvania County, Virginia.  When complete, the pipeline would transport up to two million dekatherms of natural gas per day, enabling shippers to access markets in the Northeast, Mid-Atlantic, and Southeast.  Close to 300 parties, including residents and environmental groups, intervened in the Commission's process, and FERC received more than 2,000 written and oral comments during its review.

On October 13, 2017, the Commission issued a "certificate of public convenience and necessity" (the "Certificate") under the Natural Gas Act, 15 U.S.C. § 717f(e).  The Commission found that the proposed pipeline is in the public interest, would meet a market demand, and is "environmentally acceptable."  J.A. 2853.  The Certificate authorized Mountain Valley to construct and operate the proposed pipeline, contingent on numerous conditions.  Most significant for this appeal, the Certificate requires that the pipeline be complete and available for service within three years – that is, by October 2020.

Under the Natural Gas Act, legal challenges to a Commission certificate and its underlying public-interest determination may proceed only through specified routes. A party wishing to contest a certificate first must apply for rehearing before the Commission. 15 U.S.C. § 717r(a). After that, review may be had in the United States Court of Appeals for the District of Columbia or another federal circuit court with jurisdiction. *Id.* § 717r(b). Here, though numerous parties have challenged the Certificate, their efforts thus far have been unsuccessful. In November 2017, various intervenors applied to the Commission for rehearing and a stay of the Certificate, which ultimately was denied. While that request was pending, at least three petitions for review and for stay pending review were filed with the D.C. Circuit, which denied the stay requests.[1] *Appalachian Voices v. Fed. Energy Reg. Comm'n*, No. 17-1271, 2018 U.S. App. LEXIS 2924 (D.C. Cir. Feb. 2, 2018). Importantly, the Certificate remains effective while these legal challenges proceed. *See* 15 U.S.C. § 717r(c) (neither the filing of an application for rehearing nor commencement of judicial proceedings stays a FERC order).

---

[1] The Commission denied the request for rehearing and to stay the Certificate in June 2018, several months after the issuance of the district court orders challenged in this appeal. *Mountain Valley Pipeline, LLC, Equitrans, L.P.*, 163 FERC ¶ 61,197 (June 15, 2018). This prompted the filing of at least five new petitions for review of the Certificate and for stay pending review in the Court of Appeals for the District of Columbia. The D.C. Circuit denied those additional stay requests, as well, and those cases are ongoing. *See Appalachian Voices v. Fed. Energy Reg. Comm'n*, No. 17-1271, 2018 WL 4600685 (D.C. Cir. Aug. 30, 2018).

By late November 2017, within weeks of obtaining the Certificate, Mountain Valley had entered into three master construction services agreements to lay the pipeline. Mountain Valley sought to commence construction by February 2018 with completion anticipated for December 2018, well before the Commission's deadline of October 2020. Because tree-clearing in areas with protected bats must be completed during the winter season (between mid-November and March), even a brief delay would have postponed the project's start date until November 2018. However, Mountain Valley had developed a schedule to proceed in the event of that contingency, under which it still expected to meet the Commission's in-service deadline.

Mountain Valley acquired rights-of-way to portions of approximately 85 percent of the properties along the approved pipeline route in anticipation of construction. These include both permanent easements along the pipeline route, allowing its pipeline to lie underneath the land, and temporary easements for construction. However, Mountain Valley was unable to reach agreement with the hundreds of landowners who are now parties to this litigation (the "Landowners"[2]).

**B.**

Under the Natural Gas Act, Mountain Valley's certificate entitles it to exercise the power of eminent domain to obtain any rights-of-way it cannot otherwise acquire, as necessary to construct, operate, or maintain the planned pipeline. *See* 15 U.S.C. §

---

[2] This opinion typically uses the term "Landowners" to refer to all of the landowners in this consolidated appeal. When used in the context of a particular district court case, however, it refers only to the defendant landowners in that proceeding.

717f(h).  In other words, where Mountain Valley is unable to negotiate an easement with a landowner along the pipeline route, it may obtain a condemnation order granting an easement for a fair price set by the court.

Between receiving its Certificate in October 2017 and early December of that year, Mountain Valley commenced proceedings in three different district courts to condemn a 50-foot-wide path along the pipeline route in each jurisdiction.  Within days of commencing each proceeding, Mountain Valley moved for partial summary judgment on its substantive right to take the easements by eminent domain.  In the same motions, the company sought preliminary injunctions granting immediate access and possession during the pendency of the proceedings, in order to prevent construction delays.

Each of the district courts granted Mountain Valley's motion in full.[3]  As to partial summary judgment, the district courts each held that Mountain Valley was entitled, as a matter of law, to acquire the necessary easements along the pipeline route by eminent

---

[3] Of the three district court opinions, one is published and two are unpublished. The opinion of the Northern District of West Virginia is published at *Mountain Valley Pipeline, LLC v. Simmons*, 307 F. Supp. 3d 506 (N.D.W. Va. 2018).  The unpublished opinion of the Western District of Virginia can be located at *Mountain Valley Pipeline, LLC v. Easements to Construct, Operate, & Maintain a Nat. Gas Pipeline*, No. 7:17-cv-00492, 2018 WL 648376 (W.D. Va. Jan. 31, 2018).  The unpublished opinion of the Southern District of West Virginia can be located at *Mountain Valley Pipeline, LLC v. An Easement to Construct, Operate & Maintain a 42-Inch Gas Transmission Line*, No. 2:17-cv-04214, 2018 WL 1004745 (S.D.W. Va. Feb. 21, 2018). For ease of reference, we will refer to these opinions as the "N.D.W. Va. Opinion," the "W.D. Va. Opinion," and the "S.D.W. Va. Opinion."  Citations to the N.D.W. Va. Opinion refer to its published version, and citations to the other two opinions refer to the Joint Appendix filed by the parties on appeal.

domain.   Under 15 U.S.C. § 717f(h), the courts explained, the holder of a duly issued Commission certificate has the right to condemn property if it is necessary for pipeline construction and operation and cannot be acquired by private agreement.  And that is so, they continued, regardless of pending legal challenges to that certificate or related litigation; only FERC itself or the appropriate court of appeals may stay enforcement of a Commission certificate while other legal proceedings are resolved.  Because there was no factual dispute as to satisfaction of the necessary conditions, the courts concluded, Mountain Valley was entitled to exercise eminent domain and condemn the specified portions of the Landowners' properties.

But that eminent domain process, one district court estimated, could take more than three years to complete – bringing it outside FERC's in-service deadline of October 2020 – as the courts conducted proceedings to determine the amount of just compensation for each of the hundreds of easements in question.  Accordingly, the courts turned to Mountain Valley's motions for preliminary injunctions, which sought immediate access while those proceedings were ongoing.  Applying the four-pronged test for a preliminary injunction set out in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), which requires the movant to establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest," each district court granted Mountain Valley's request for immediate possession of the easements.

The first element of the *Winter* test – likelihood of success on the merits – was easily satisfied, as the courts "ha[d] already determined on the merits that Mountain Valley has the right to condemn the landowners' property interests." *S.D.W. Va. Opinion*, at J.A. 2715.  On the second element – irreparable harm – the district courts held that Mountain Valley would suffer various forms of irreparable injury if it were required to delay construction until after completion of the eminent domain proceedings. Most important, without a preliminary injunction, Mountain Valley would be unable to meet the Commission's October 2020 in-service deadline, which could come and go before the courts had finally determined due compensation for the hundreds of easements at issue.

In response, the Landowners proposed that any injunctive relief be delayed until November 2018, when bat-conservation regulations again would permit seasonal tree-clearing and, according to its own contingency schedule, Mountain Valley could commence construction and still expect to meet the Commission's deadline.  But that delay itself, the district courts found, would impose substantial economic losses on Mountain Valley, in the form of lost revenues, carrying costs, and contractual fees that Mountain Valley would not be able to recover "in this or any other litigation." *N.D.W. Va. Opinion*, 307 F. Supp. 3d at 526.  The district courts carefully considered Mountain Valley's evidence on this issue, questioning whether Mountain Valley's losses might be mitigated.  All concluded, however, that on the facts presented, Mountain Valley had satisfied its burden of establishing irreparable harm.

The district courts further held that Mountain Valley's losses would exceed any harms a preliminary injunction might cause the Landowners, and that the balance of the equities – the third *Winter* factor – therefore favored preliminary relief.  The key finding here, as one court explained it, was that virtually all harms identified by the Landowners would be inflicted as a result of the exercise of eminent domain itself, and not because of the preliminary injunction:  Completion of the pipeline "will have the same impact on [Landowners'] property whether [Mountain Valley] is granted immediate access or commences construction only after [L]andowners have received just compensation." *N.D.W. Va. Opinion*, 307 F. Supp. 3d at 530.

On the fourth element – the public interest – the district courts relied heavily on the Certificate itself, which was predicated on the Commission's finding that construction of the pipeline is in the public interest.  The Landowners disagreed with that assessment, citing the dissenting opinion of one of the FERC commissioners and arguing that pipeline construction in fact would have negative effects on the environment and areas of historical and cultural importance.  As the district courts explained, however, challenges to a FERC certificate must follow the prescribed statutory route, and condemnation proceedings may not be used to mount a collateral attack.  "The Court will not second-guess FERC's determination that [Mountain Valley's] project will benefit the public need for natural gas as the [Landowners] request; FERC possesses the expertise necessary to make that determination."  *Id.* at 531.

Accordingly, the district courts all found that Mountain Valley satisfied the *Winter* preliminary injunction standard and should be granted immediate possession.  At the

same time, the courts recognized that the Landowners were entitled to a "reasonable, certain, and adequate provision" for obtaining just compensation at the end of the condemnation proceedings. *See, e.g.*, *W.D. Va. Opinion*, at J.A. 1432 (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890)). The courts thus required that Mountain Valley make a deposit in an amount several times the estimated value of each easement.[4] During the pendency of the proceedings, each Landowner would be entitled to draw on that fund, up to the estimated value of the easement across its property. The district courts also required Mountain Valley to post a surety bond in an amount double each easement's estimated value, conditioned on its payment of just compensation at the conclusion of proceedings.

## II.

The Landowners have not appealed the entry of partial summary judgment against them, nor the merits determination on which it rests: that under 15 U.S.C. § 717f(h), Mountain Valley currently has the right to exercise eminent domain and take easements on their property to build and operate the FERC-approved pipeline. But they do dispute the appropriateness of preliminary relief, and timely appealed the issuance of the three

---

[4] Appraisal values ranged from $3,001 for many of the easements to six figures for some. The $3,001 estimate tracks the jurisdictional provision of the National Gas Act, limiting federal jurisdiction to those cases in which "the amount claimed by the owner of the property to be condemned exceeds $3,000." 15 U.S.C. § 717f(h).

preliminary injunctions awarding Mountain Valley immediate possession of the easements while just compensation is determined.

We "review the decision to grant or deny a preliminary injunction for an abuse of discretion." *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 859 (4th Cir. 2001). A clear error in factual findings or a mistake of law is grounds for reversal. *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009). But abuse of discretion is a deferential standard, and so long as "the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse," even if we are "convinced that . . . [we] would have weighed the evidence differently." *Walton v. Johnson*, 440 F.3d 160, 173 (4th Cir. 2006) (en banc) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

The Landowners advance two principal arguments against the preliminary injunctions. First, they argue that federal courts lack authority to grant immediate possession – that is, possession prior to the determination and payment of just compensation – and that the injunctions therefore are legally infirm. And in the alternative, they argue that the district courts improperly applied the *Winter* factors and abused their discretion in awarding preliminary relief here. For the reasons given below, we disagree on both counts.

## A.

We begin with the Landowners' threshold argument: that district courts may not order immediate possession of condemned property under 15 U.S.C. § 717f(h). Instead, the Landowners contend, the district courts were authorized to grant Mountain Valley

access to the easements in question only after eminent domain proceedings were completed, with just compensation for each individual easement calculated and paid.

We note at the outset that this is a statutory argument, not a constitutional one. The Landowners concede, as they must, that the Constitution does not prohibit condemnations in which possession comes before compensation. The Supreme Court settled that question nearly 130 years ago in *Cherokee Nation*, holding that the Constitution "does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken." 135 U.S. at 659. So long as the owner is assured through "reasonable, certain, and adequate" means that he ultimately will be compensated fairly, constitutional requirements are met. *Id.* The district courts in this case carefully followed *Cherokee Nation*, insisting on "adequate protections to [the Landowners] to ensure that they will receive just compensation," *W.D. Va. Opinion*, at J.A. 1432, and the Landowners do not dispute that the required deposits and bonds satisfy this standard.

Instead, the Landowners argue that there was no statutory authority for what they call "take-first, pay-later" condemnations. Under the Natural Gas Act, they insist, the district courts were permitted to grant possession only after the determination and payment of just compensation. This is so, they contend, because the Act does not expressly allow for immediate possession, and thus implicitly forecloses the courts from granting that possession through the equitable remedy of a preliminary injunction.

But as the Landowners recognize, our court has rejected precisely this argument before, holding in *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004)

23

that a federal court indeed may grant a gas company immediate possession of private property along an approved pipeline route, with payment of just compensation to follow. In *Sage*, as in this case, a gas company filed condemnation proceedings to access numerous properties along the route of a Commission-approved pipeline. 361 F.3d at 819–20. The district court first concluded that the gas company had a substantive right to exercise eminent domain over the easements sought. *Id.* at 820, 823. It then invoked its traditional equitable authority to grant a preliminary injunction allowing immediate possession, in order to avoid construction delays. *Id.* at 820. The landowners appealed to this court, arguing that the district court lacked "equitable power to order immediate possession in a condemnation case," given the absence of any express authorization in the Natural Gas Act. *Id.* at 820.

We disagreed. What the landowners' argument "overlook[ed]," we explained, was "the preliminary injunction remedy provided in the Federal Rules of Civil Procedure that were adopted with the tacit approval of Congress." *Id.* at 824. Once a gas company had established its substantive right to eminent domain under the National Gas Act, we concluded, it was entitled to apply under Rule 65(a) for a preliminary injunction, subject to the normal rules governing the availability of equitable relief. *Id.* And contrary to the landowners' argument, we found ample "safeguards in place to protect the landowner." *Id.* at 826. The district court's requirement that the gas company deposit with the court an amount equal to the appraised value of the easements satisfied the *Cherokee Nation* standard. *Id.* at 824. And if the deposit turned out to be less than the final compensation awarded, we noted, the landowners would remain protected:   When immediate

24

possession is granted through a preliminary injunction, title itself does not pass until compensation is ascertained and paid, so the landowners could proceed with a trespass action if the company did not promptly make up the difference. *Id.* at 825–26 (citing *Cherokee Nation*, 135 U.S. at 660).

This case is on all fours with *Sage*. As in *Sage*, there already has been a finding that the gas company has a substantive right to condemn the easements in question, here in the form of partial summary judgment rulings that are unchallenged on appeal. And the district courts adequately safeguarded the Landowners' interests with a deposit provision that is similar to but more protective than the one we approved in *Sage*, in that it requires Mountain Valley to deposit with the court an amount that is several times larger than the estimated value of the condemned easements[5] – making it exceedingly unlikely that resort to the trespass actions envisioned in *Sage* ever could be required.

The Landowners do not dispute that *Sage*, by its terms, governs this case. Instead, they argue that *Sage* was wrongly decided, and to give the court an opportunity to correct what they see as an important misstep, they moved for an initial hearing of this appeal en banc.[6]  Our court denied that motion. Order, *Mountain Valley Pipeline, LLC v.*

---

[5] Two of the district courts required each deposit to be three times the respective easement's appraisal value, while the third district court required the deposit to be four times the appraisal value.

[6] Among other contentions, the Landowners argue that *Sage* created a circuit split with *Northern Border Pipeline Co. v. 86.72 Acres*, 144 F.3d 469 (7th Cir. 1998), which held that the district court lacked authority to issue a preliminary injunction ordering landowners to grant the pipeline company immediate possession of land.  However, as we expressly recognized in *Sage*, the pipeline company in *Northern Border* had not yet (Continued)

*6.56 Acres of Land*, No. 18-1159 (4th Cir. May 25, 2018). Accordingly, we remain bound to follow *Sage*. *See United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) ("A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." (internal quotation marks omitted)). And as we have explained, *Sage* squarely forecloses the Landowners' argument that the district courts lacked the authority to grant immediate possession in a Natural Gas Act condemnation.

**B.**

The only remaining question for this panel is whether the district courts abused their discretion in issuing preliminary injunctions under the *Winter* standard. On this question, too, *Sage* is highly instructive. In *Sage*, after holding that district courts may grant immediate possession to a gas company with a valid FERC certificate, we went on to consider whether the gas company could satisfy the standard conditions for

---

obtained a district court order finding that it was entitled to the land; accordingly, it had no equitable right to seek a preliminary injunction granting immediate possession. *Sage*, 361 F.3d at 828; *see also Transwestern Pipeline Co., LLC v. 17.19 Acres of Prop.*, 550 F.3d 770, 777 (9th Cir. 2008) (distinguishing *Sage* from *Northern Border* on this basis). In this case, however, unlike *Northern Border*, Mountain Valley has obtained such orders of condemnation.

preliminary relief.  361 F.3d at 828–30.[7]  It could, we concluded, and we affirmed the district court's preliminary injunction as within its discretion.  *Id.* at 830.

Success on the merits was not only likely but guaranteed, we held, given the district court's determination – uncontested on appeal – that the gas company had the right to condemn the landowners' property.  *Id.* at 829–30.  We sustained as amply supported by the record the district court's finding that the gas company would suffer irreparable harm in the absence of preliminary relief, both because it would be forced to breach contracts it already had entered into and absorb the financial consequences, and because the "extended period of time" necessary to hold multiple compensation hearings would make it impossible for the company to meet its FERC deadline.  *Id.* at 828–29.  The landowners, by contrast, had identified no cognizable harm flowing from preliminary relief rather than condemnation itself; any interference with the "productive capacity of their land" would be the same even if compensation was paid and determined before access was granted.  *Id.* at 829.  Finally, FERC's issuance of a certificate was enough to establish that the pipeline project would serve the public interest, and a "delay in construction would postpone" the benefits identified by FERC.  *Id.* at 830.

---

[7] At the time *Sage* was decided, we analyzed preliminary injunctions under the balance-of-hardship approach set out in *Blackwelder Furniture Co. of Statesville, Inc. v. Selig Mfg. Co.*, 550 F.2d 189, 195 (4th Cir. 1977).  We "recalibrated" that approach after *Winter*, which requires a party seeking preliminary relief to satisfy all four prongs of the preliminary-injunction standard, and does not employ a sliding scale.  *See Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013); *Winter*, 555 U.S. at 20.  But because *Sage* separately analyzed each of the four *Winter* prongs, it remains directly on point.

Since *Sage* was decided in 2004, many courts, both within and outside this circuit, have issued preliminary injunctions granting immediate possession to gas companies under closely analogous circumstances.  *See, e.g.*, *S.D.W. Va. Opinion*, at J.A. 2713–14 (collecting district court cases); *Columbia Gas Transmission, LLC v. 1.01 Acres*, 768 F.3d 300, 314–16 (3d Cir. 2014); *All. Pipeline L.P. v. 4.360 Acres of Land*, 746 F.3d 362, 368–69 (8th Cir. 2014); *cf. Transwestern Pipeline Co. v. 17.19 Acres of Prop.*, 550 F.3d 770, 775–78 (9th Cir. 2008) (holding that immediate possession is appropriate once the court has determined that the gas company has a right to condemn).

It is with *Sage* and this body of authority in mind that we review the district courts' preliminary injunctions for abuse of discretion, applying *Winter*'s four-pronged test.  For the reasons given below, we find no abuse of discretion and affirm the entry of preliminary relief.

## 1.

The first *Winter* prong – likelihood of success on the merits – is uncontested, and for good reason.  Mountain Valley has done more than establish a likelihood of success on the merits; it already has succeeded on the merits.  The district courts granted partial summary judgment to Mountain Valley on its claim that it is entitled to exercise the power of eminent domain over the Landowners' property, notwithstanding the pendency of legal challenges to the Certificate, and the Landowners have not challenged those rulings on appeal.  There is no question, then, that Mountain Valley may take easements

across the properties at issue, making this the rare preliminary-injunction case in which success on the merits is guaranteed.[8]

### 2.

We also find no clear error or abuse of discretion in the district courts' findings that Mountain Valley would incur irreparable harm absent preliminary injunctions, in satisfaction of *Winter*'s second element. To establish irreparable harm, the movant must make a "clear showing" that it will suffer harm that is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (internal quotation marks omitted). Additionally, the harm must be irreparable, meaning that it "cannot be fully rectified by the final judgment after trial." *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 680 (7th Cir. 2012) (internal quotation marks omitted). The district courts properly applied that standard here, and we have no ground for disturbing their conclusions.

First and most important, it is undisputed that without preliminary relief, Mountain Valley almost certainly would be unable to meet FERC's October 2020 in-service deadline. As the court explained in *Sage*, construction of a pipeline is a lengthy and complex process: "Certain portions of the project have to be completed before

---

[8] This unusual posture also addresses the Landowners' argument that mandatory preliminary injunctions – those that alter rather than preserve the status quo – are disfavored. *See Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994). Whatever the general force of that observation, where "the applicants' right to relief [is] indisputably clear," as here, mandatory injunctive relief remains available. *See Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972).

construction can begin on other portions," and "any single parcel has the potential of holding up the entire project."  361 F.3d at 829.  The district courts found that this case is no exception, describing the eleven distinct segments of pipeline construction that must be sequenced around a limited window during which federal regulations allow for necessary tree-clearing.  *See N.D.W. Va. Opinion*, 307 F. Supp. 3d at 527.  But at the same time, determining just compensation for the multiple tracts of land affected by a pipeline is itself a lengthy and complex process, *see Sage*, 361 F.3d at 828–29, which in this case could extend for three years or more, taking it past the Commission's deadline of October 2020.  The combined effect is that without a preliminary injunction, Mountain Valley likely would lose the right to construct the pipeline altogether – an outcome that qualifies as an irreparable injury under *Sage*.  *See id.* at 829.

In response to that straightforward case for preliminary relief, the Landowners urged the district courts to adopt a more "narrow[] analy[sis]," focused on whether Mountain Valley "needs access to their properties now or whether it still can meet FERC's deadline if granted access later."  *N.D.W. Va. Opinion*, 307 F. Supp. 3d at 528.  Specifically, the Landowners argued that entry of any preliminary injunction should be delayed for approximately nine months, until November 2018 – when the tree-clearing window would reopen, and Mountain Valley's own contingency schedule showed that the company could begin construction and still expect to finish before the FERC deadline of October 2020.

The Landowners' argument assumes that the need to narrowly tailor preliminary relief, *see PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011),

means that preliminary injunctions should issue only at the last minute, and places a great deal of confidence in Mountain Valley's ability to complete the work on an expedited schedule. Even so, that leads us directly to the second form of irreparable injury found by the district courts: the significant and unrecoverable financial losses that Mountain Valley would sustain if access were delayed until November 2018, rather than granted immediately.

To establish that injury, Mountain Valley presented evidence of three types of monetary harm: lost revenues from the delay in pipeline service, estimated at $40 to $50 million per month; charges and penalties for the breach of construction contracts, totaling $200 million; and carrying costs to prolong the project, such as storage and personnel expenses, for an additional $40 to $45 million. The district courts closely scrutinized those alleged losses, noting testimony suggesting that "some of the claimed damage amounts might be lower," *W.D. Va. Opinion*, at J.A. 1423, or be "capable of mitigation," *N.D.W. Va. Opinion*, 307 F. Supp. 3d at 525. But even assuming a "lower amount of loss than estimated by [Mountain Valley]," *id.* at 528, the courts concluded that there still would be enough to show irreparable harm under *Sage*, which credited as irreparable injury not only the prospect of missing the FERC deadline but also "increased construction costs and losses" from the breach of service contracts, *id.* at 526–27 (quoting *Sage*, 361 F.3d at 830).

On appeal, the Landowners raise two principal challenges to the district courts' findings of irreparable injury. Most significantly, they insist that the district courts erred at the threshold in considering Mountain Valley's economic losses at all. According to

the Landowners, prospective financial losses can never qualify as "irreparable injury," at least where they do not "threaten the party's very existence." Br. of Appellants at 16. All three district courts rejected that argument as inconsistent with our case law, and we agree.

It is true that when anticipated economic losses will be recoverable at the end of litigation, then those losses generally will not qualify as irreparable for purposes of preliminary relief. *See Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). That makes perfect sense: By definition, a temporary loss is not irreparable. Only when a temporary delay in recovery somehow translates to permanent injury – threatening a party's very existence by, for instance, driving it out of business before litigation concludes – could it qualify as irreparable. *See Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 500 (4th Cir. 1981). But otherwise, financial losses that can be recovered by a prevailing party at the close of litigation ordinarily will not justify preliminary relief. *See Hughes Network Sys. v. Interdigital Comms. Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).

This case is different, because here, Mountain Valley's economic losses would *not* be recoverable at the end of litigation. "No party contests that, if [Mountain Valley] suffers financial losses as the result of its inability to access the condemned easements, it will not be able to recover those losses in this or any other litigation." *N.D.W. Va. Opinion*, 307 F. Supp. 3d at 526. As the district courts recognized, that is enough to take this case out of the ordinary presumption against treating economic losses as irreparable injury. *See id.* at 525 ("[W]hile it is beyond dispute that economic losses generally do not

constitute irreparable harm, this general rule rests on the assumption that economic losses are recoverable." (internal quotation marks omitted)).  In the unusual circumstances presented here, in which monetary damages will be unavailable to remedy financial losses when litigation ends, there is no bar to treating those losses as irreparable injury justifying preliminary relief.  *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) ("[I]rreparable harm is often suffered when . . . the district court cannot remedy the injury following a final determination on the merits." (internal alterations and quotation marks omitted)); *cf. Fed. Leasing*, 650 F.2d at 500 (finding irreparable harm when plaintiff's injury was not "otherwise compensable in damages").

Like the district courts, we think all of this is clear enough from our general case law on irreparable injury and preliminary injunctions.  But if there were any doubt, it would be resolved by *Sage* – which, as the district courts also recognized, expressly treats prospective economic injuries flowing from a delay in pipeline construction as a form of irreparable injury.  Indeed, many of the of types of financial injury identified by Mountain Valley in this case – including losses flowing from delays in pipeline service and contractual breach – are precisely the same as those we credited in *Sage* as grounds for preliminary relief.  *See* 361 F.3d at 828–29.  And, as noted above, *Sage* is not alone on this point; subsequent cases have followed *Sage*, relying on similar, unrecoverable financial harms to gas companies to find irreparable injury that justifies immediate access to condemned properties.  *See*, *e.g.*, *All. Pipeline L.P. v. 4.500 Acres of Land*, 911 F. Supp. 2d 805, 814–15 (D.N.D. 2012) (finding irreparable harm based in part on carrying costs associated with delay in construction); *Transcon. Gas Pipe Line Co. v. Permanent*

*Easement for 0.03 Acres*, No. 4:17-cv-00565, 2017 WL 3485752, at *3 (M.D. Pa. Aug. 15, 2017) (finding irreparable harm because gas company would "suffer substantial costs and loss of profits if it cannot begin the project as soon as possible"); *see generally Columbia Gas Transmission LLC v. 0.85 Acres*, No. 1:14-cv-02288, 2014 WL 4471541, at *6 (D. Md. Sept. 8, 2014) ("Many courts [in similar cases] have held that undue delay [and] financial burden . . . satisfy the irreparable harm requirement.").

The Landowners' second challenge to the district courts' findings of irreparable injury fares no better. According to the Landowners, Mountain Valley's prospective financial losses flow entirely from the company's voluntary decision to enter into early construction and service contracts, geared toward starting pipeline service well in advance of the FERC deadline. Harms resulting from breaches of those contracts, the Landowners argue, are thus "self-inflicted," and cannot be the basis for a preliminary injunction. Like the district courts, we disagree.

We do not doubt that some forms of "self-inflicted" harm may be discounted or ignored altogether in the preliminary-injunction analysis. *See Di Biase*, 872 F.3d at 235 (preliminary injunction not warranted where the "moving parties have not shown that they availed themselves of opportunities to avoid the injuries of which they now complain"); *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 947 (9th Cir. 2013) ("[T]raditional equitable considerations such as . . . unclean hands may militate against issuing an injunction that otherwise meets *Winter*'s requirements."). But as the district courts here explained, when a gas company is governed by FERC's approval process and in-service deadline, early contractual

obligations are not "self-inflicted" in the relevant sense. *See N.D.W. Va. Opinion*, 307 F. Supp. 3d at 528 (recognizing that "a FERC-governed, natural-gas company's self-inflicted contracts and deadlines are not driven solely by its desire to place the pipeline into service as quickly as possible" (internal quotation marks omitted)). Rather, lining up service contracts years in advance is "encourage[d], if not require[d]" by a FERC approval process that treats such contracts as evidence of market demand. *See S.D.W. Va. Opinion*, at J.A. 2714. And as Mountain Valley's witness testified, once a FERC certificate issues, meeting FERC's three-year in-service deadline requires that the gas company have contractors at the ready and proceed expeditiously with construction. *See W.D. Va. Opinion*, at J.A. 1427. Under those circumstances, the district courts concluded, Mountain Valley's decision to set its schedule as it did, and contract accordingly, was "entirely reasonable." *N.D.W. Va. Opinion*, 307 F. Supp. 3d at 528. And in light of that judgment, the district courts did not err by including harms associated with those contracts in their irreparable injury analyses.

### 3.

Under *Winter*'s third prong, the district courts were required to weigh the equities, considering the harms the Landowners would suffer if preliminary injunctions issued – that is, if Mountain Valley were permitted to access the condemned land prior to determination and payment of just compensation. The district courts held that the balance of the equities favored Mountain Valley, principally because the Landowners' harms would be the same whether access was granted prior to or only after just compensation was paid. We find no error in the courts' reasoning.

Before the district courts, the Landowners presented affidavits and testimony about injuries to their property – tree-felling, harms to water sources, and the like – that would be sustained if Mountain Valley were granted access.  As the district courts explained, however, those injuries arise not from the grant of preliminary relief – the "take-first, pay-later" condemnations to which the Landowners object – but from construction of the pipeline itself.  Whether the Landowners are compensated before or after Mountain Valley takes the easements to which it is legally entitled, the harm to their property will be identical.  *See N.D.W. Va. Opinion*, 307 F. Supp. 3d at 530 ("At bottom, it is the [Natural Gas Act] and the FERC Certificate that are responsible for the [Landowners'] injuries, and delaying access until just compensation is paid will do nothing to alleviate those burdens." (citing *Sage*, 361 F.3d at 829)).  And either way, the Landowners will be entitled to the same just compensation for the takings.  *See S.D.W. Va. Opinion*, at J.A. 2720 ("[J]ust compensation is guaranteed by the Fifth Amendment whether property condemned under the [Natural Gas Act] is taken immediately or after a trial." (citing *Sage*, 361 F.3d at 829)).

It is true, as the Landowners contend, that because the process of determining just compensation will be a lengthy one, the grant of preliminary relief means that their property will be disturbed sooner rather than later.  But as we held in *Sage*, that is "simply a timing argument," not an independent injury traceable to the "taking [of] property *before determining just compensation*." 361 F.3d at 829 (emphasis added).  Indeed, as *Sage* explains, any harm that otherwise might be experienced because of a gap in time between possession and compensation is addressed by the right of landowners to

draw upon court-ordered deposits during the pendency of condemnation proceedings. *Id.*; *see also S.D.W. Va. Opinion*, at J.A. 2720 (any injury related to early loss of use is "blunted by the landowners' right to draw down the money that Mountain Valley has indicated it is willing to deposit as assurance for the taking" (internal alterations and quotation marks omitted)).  In any event, while a small group of Landowners testified that immediate as opposed to delayed possession would cause them special injury, we cannot say that the district courts abused their discretion in finding that the balance of the equities nevertheless favored Mountain Valley.  One Landowner, for instance, operates property that serves as a wedding venue and pick-your-own-apples orchard, and testified that he would suffer greater harm as a result of construction in the spring and summer than if possession were delayed until November 2018.  And, to give a second example, another Landowner alleged special disturbances to farm animals and timber values that would result from immediate possession of her land.  The district courts concluded, however, that the potential harms to Mountain Valley from delay outweighed the harms to the "very few landowners" who had identified a potential injury arising from immediate possession, *W.D. Va. Opinion*, at J.A. 1431, and we think that judgment was well within their discretion.

We note that, compared to the Western District of Virginia, the other two district courts did not address as directly the potential that immediate rather than postponed possession might be especially harmful to certain Landowners.  In particular, the Southern District of West Virginia seems to have misapprehended our holding in *Sage* as requiring a finding in favor of a pipeline in the context of [Natural Gas Act]

condemnation actions.  *S.D.W. Va. Opinion*, at J.A. 2720 ("In *Sage*, the Fourth Circuit conclusively spoke on this issue in the context of [Natural Gas Act] condemnation actions.").  Given the Supreme Court's instruction in *Winter* that a preliminary injunction may "never [be] awarded as of right," the district courts were required to consider the particular harms presented by the Landowners in these cases in weighing the balance of the equities and were not constrained by our precedent to find in favor of Mountain Valley on this point.  *See* 555 U.S. at 24.  To the extent that *Sage* could be read otherwise, we take this opportunity to clarify that while the balance of equities may often tip in favor of the pipeline company in the context of Natural Gas Act condemnations, such an outcome is by no means guaranteed or automatic.  Thus, a district court must consider evidence of harm to the particular landowners in a given condemnation action when determining whether the pipeline has met the third preliminary injunction requirement.  After thoroughly reviewing the particular evidence presented by the Landowners in the Northern District of West Virginia and Southern District of West Virginia, we are confident that there was no evidence presented of harm to the Landowners resulting from the injunction, as opposed to the pipeline itself, that would outweigh the harm that Mountain Valley would likely suffer absent an injunction.

Finally, the Landowners point to the possibility that ongoing legal challenges to the Certificate will bear fruit – in which case, they argue, the grant of preliminary relief will have caused them injury by allowing access that later would prove unjustified.  The district courts declined to credit this argument, and properly so.  As they had explained already in granting partial summary judgment to Mountain Valley on its substantive right

to exercise eminent domain, only two entities – FERC and a court of appeals with jurisdiction under 15 U.S.C. § 717r(b) – may stay the enforcement of a FERC certificate pending resolution of legal challenges.   "District courts in [Natural Gas Act] condemnation proceedings," by contrast, "do not have authority to consider other legal challenges to the FERC order, [or] . . . the ability to stay condemnation proceedings to wait until other legal challenges are resolved." *W.D. Va. Opinion*, at J.A. 1415–16.  The Landowners have not challenged that holding on appeal, and it forecloses their argument here:  Any harms that might arise from the pendency of litigation around the Certificate are "not harms that would preclude the grant of immediate possession" to Mountain Valley in a condemnation proceeding. *Id.* at 1429.

4.

Finally, on the fourth *Winter* element, the district courts reasonably determined that the preliminary injunctions were in the public interest, as they would allow for expeditious construction of a FERC-approved pipeline.  As we explained in *Sage*, the issuance of a FERC certificate signifies that the Commission – the agency charged with administering the Natural Gas Act – has determined that pipeline construction will advance the congressional purposes behind that Act and "serve the public interest," making available to consumers an adequate supply of natural gas at reasonable prices. 361 F.3d at 830.  It follows, we reasoned, that granting a gas company immediate access to necessary easements during the pendency of condemnation proceedings likewise would advance the public interest, because a "delay in construction would postpone these benefits." *Id.*

The district courts did not abuse their discretion in applying *Sage* to the facts of these cases. Mountain Valley's certificate rests on an agency finding that the proposed pipeline will benefit the public by meeting a market need for natural gas, and will do so in a way that is environmentally acceptable. The Landowners disagree with FERC's assessment, and – relying on the opinion of a dissenting FERC commissioner – argued before the district courts that "the public interest in this case does not support allowing the construction of the pipeline, due to the environmental hazards or the other possible effects on historical areas or artifacts as a result of the construction." *W.D. Va. Opinion*, at J.A. 1431. But as the district courts explained, that is a challenge to the Certificate itself that must be raised before the Commission and then, if necessary, the appropriate court of appeals, not by way of collateral attack in a condemnation proceeding: "[A]s the Certificate Order itself makes clear, FERC has considered and rejected the very arguments against the [pipeline] raised in the briefing and in court. Those argument[s] are not properly before the court. They are indirect and collateral attacks on the order itself." *Id.*; *accord N.D.W. Va. Opinion*, 307 F. Supp. 3d at 531 ("The Court will not second-guess FERC's determination that [the] project will benefit the public need for natural gas as the [Landowners] request."); *S.D.W. Va. Opinion*, at J.A. 2721 ("FERC conducted a careful analysis of the [project] and determined that the project will promote [the Natural Gas Act's] goals and serve the public interest." (quoting *Sage*, 361 F.3d at 830)).

That is not to say, of course, that a FERC certificate necessarily will be dispositive of the public interest inquiry under *Winter*. Apart from setting an in-service deadline, a

FERC certificate does not address timing, and so cannot establish by itself that immediate possession, as opposed to pipeline construction generally, is in the public interest.  But echoing our reasoning in *Sage*, the district courts here concluded that because delaying construction would delay – or, if Mountain Valley were unable to meet its FERC deadline, frustrate entirely – the public benefits identified by the Commission, the public interest factor favored preliminary relief.  *See N.D.W. Va. Opinion*, 307 F. Supp. 3d at 531 ("There can be no dispute that delaying [Mountain Valley's] completion of the project will delay the introduction of the benefits identified by FERC."); *W.D. Va. Opinion*, at J.A. 1432 ("*Timely* completion of the [p]roject, FERC has expressed, is in the public interest." (emphasis added)).  And while there may be cases in which there are public-interest arguments against immediate possession that were not considered by the Commission in reviewing the public benefit of the pipeline project writ large, this is not one of them.  As the Landowners' own brief makes clear, the argument they advanced in the district courts and advance now on appeal – that "the public interest favors protection of their constitutional rights, the environment, and historical resources," Br. of Appellants at 46 – is addressed to the pipeline project generally rather than to immediate possession specifically, raising the same issues that were considered and rejected by FERC when it issued the Certificate.[9]

---

[9] We note that the Southern District of West Virginia did not recognize the distinction between the public interest in pipeline construction generally and in immediate access specifically. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that an *injunction* is in the public interest.") (emphasis added).  The district court did, however, incorporate our reasoning under the (Continued)

## III.

For the foregoing reasons, we find that the district courts did not abuse their discretion in granting preliminary injunctive relief to Mountain Valley.  Accordingly, we affirm the district courts' orders.

*AFFIRMED*

---

public-interest prong in *Sage*, which does address that issue and finished with the common-sense observation that a construction delay would postpone the benefits relied on by FERC in issuing its certificate.  *See S.D.W. Va. Opinion*, at J.A. 2721 (citing *Sage*, 361 F.3d at 830).  It also cited the first two district court opinions approvingly, and recognized that it was faced with "virtually identical circumstances." *Id.* at 2713.  Under these circumstances, the absence of additional analysis of the public-interest prong does not amount to an abuse of discretion.